WILLIAM HALLIDAY and W. P. HASKINS, Executors, &c., *v.* ERASTUS P. HART and WILLIAM BEACH.

The performance of an unqualified legal obligation by the payment of part of the amount due upon a promissory note, is not a valid consideration for the extension of payment of the remainder, so as to discharge sureties.

H. being the holder of two promissory notes made by W.—one for $1,000 and the other for $500, both of which were overdue—W. proposed to pay $400 on the $1,000 note. H. offered to receive the payment on the $500 note, and in consideration thereof to extend the time for the payment of the other note. To this proposition W. declined to accede, but finally, at the instance of H., he agreed to apply $330 upon the $500 note, and $70 upon the $1,000 note. H. agreed, in consideration thereof, to extend the time for the payment of the $1,000 note, and thereupon the money was paid and applied as H. proposed; in consideration of which, he executed a written agreement to extend the time for the payment of the $1,000 note, until the first day of October then next. *Held* that in making these payments W. only discharged the legal obligations already resting upon him; and that neither the fact of such payments, nor the appropriation thereof, upon the two securities, furnished any consideration for the agreement to give time for the payment of the $1,000 note.

*Held, also,* that the referee properly excluded parol evidence, offered for the purpose of showing that the $70 was paid as interest on the $1.000 note; such testimony tending to contradict, vary and alter the written agreement.

*Held, further,* that it was not competent for indorsers, not parties to the written contract between W. and H., to contradict, vary or alter the consideration expressed therein, by parol evidence.

THIS action was commenced by the plaintiff's testator, to recover of the defendants the amount of a certain promissory note, made by the defendant Wait. It was dated on the 21st of March, 1855, and given for the sum of $1,000, payable one year from date, with interest thereon semi-annually, to the order of the defendant Sayre, at the Elmira Bank, and endorsed by him, and by the defendants Howe, Hunt and Beach. The referee before whom the action was tried found, as matter of fact, that the plaintiff also held another note made by said Wait, for $500, dated April 1st, 1855, payable one year from date, and endorsed by James Sayre; which last mentioned note was given on a contract for the

sale, by the plaintiff to said Wait, of a certain lot of land. That after the note mentioned in the complaint became due, the defendant Howe purchased from the defendant Sayre a note for $1,100, made by Sayre, dated April 24, 1856, payable three months after date, and endorsed by said B. S. Sayre, and offered the same to the plaintiff's testator in exchange for the note mentioned in the complaint, that being the object for which it was given. That the plaintiff's testator declined to make the exchange, but consented to the request of Howe to hold said note for $1,100, as collateral security. That, on the 16th day of June, 1856, the defendant Wait paid to the plaintiff the sum of $400, and, before paying the same, expressed a wish to have it applied on the note mentioned in the complaint, and the plaintiff expressed a wish to apply it on the aforesaid note for $500, except the sum of $35, to pay the back interest on the note of $1,000 (the interest due theron, on the 21st of September, 1855, having been paid). That it was finally agreed between them that $70 should be applied on the said note mentioned in the complaint, and the residue, $330, on the note for $500. That Wait thereupon endorsed the said respective amounts upon the notes, and drew up a writing which the plaintiff's testator signed and delivered to him, and which was as follows:

"In consideration of seventy dollars to me in hand paid, and endorsed on a note of one thousand dollars, made by B. Wait and endorsed by James Sayre, O. B. Howe, E. P. Hart, and William Beach, dated March 21, 1855, and due one year from date, value received, and interest semi-annually; also, for the payment of three hundred and thirty dollars, and endorsed on a note by B. Wait for five hundred dollars, same date as above, and due on the first day of April, 1856, with interest annually. I do hereby agree to and with the said B. Wait, to extend the time of payment of the said one thousand dollar note until the first day of October now next ensuing, and give possession of

the house and lot on Second street, said money above-mentioned received of B. Wait; also, to take no advantage of, or sue a collateral note in my hands given by James Sayre and endorsed by B. S. Sayre.

"(Signed)            SELAH HALLIDAY.
" ELMIRA, *June* 16. 1856."

He also found that Wait and James Sayre were both insolvent when the said note for $1,000 became due, and when the above agreement was made; that the sum of $35, being for the interest due September 21, 1855, had been paid, and that the balance due thereon, with interest and notary's fees, was $1,077.85. And the referee found, as matter of law, that the moneys so paid by Wait to Halliday were such as were due to him, and such as he had a legal right to have, and such as said Wait was legally bound to pay; that such payment constituted no good or valuable consideration for the agreement, and that consequently said agreement was void, and did not suspend the right of Halliday to prosecute said note, and was no defense to this action. .The referee further found, that inasmuch as it appeared that the parties to the agreement had fully discussed and considered the subject of the consideration thereof, and how the $70 paid on the note in suit should be applied, and fully and carefully stated such consideration in said agreement, parol evidence as to what one or the other had said upon that subject before the writing was executed was not admissible for the purpose of varying or contradicting the same, or changing its legal effect. Judgment was entered for the plaintiff upon these reports, and the same was affirmed at the general term. Halliday died, and his executors were substituted in his place as plaintiffs, and the defendants Hart and Beach appealed to this court.

*John H. Reynolds*, for the appellants.

I. There was evidence given by the defendants, tending to show that Wait, the maker of the notes, when he made

the payment of $400, desired to have the whole amount applied upon the note in suit, but finally consented that $330 might be applied upon the $500 note, and $70 on the note in suit, in consideration of Halliday's agreeing to extend the time of paying of the note in suit, and this evidence the referee rejected in deciding the cause, and this ruling it is submitted, was erroneous.

1. Both notes being over due, Wait had the undoubted legal right to make the payment upon which note he pleased, and the plaintiff could not control it. (*Allen* v. *Culver*, 3 Denio, 284, 300.)

2. It was not only his right but his duty to make the payment on the large note, and to that extent relieve his endorsers. (*Pattison* v. *Hull*, 9 Cowen, 747; *Dows* v. *Morewood*, 10 Barb. 183, 189; *Allen* v. *Culver*, 3 Denio, 284, 300; *Bridenbecker* v. *Lowell*, 32 Barb. 11, 22, 23, 24.)

3. And his consenting to waive this right at the instance of the plaintiff, on the agreement of the plaintiff to extend the time of payment of the $1,000 note was a good consideration for the agreement to extend the time. · It was a consideration beneficial to the plaintiff, as the endorsement was made, under this arrangement, upon the note for the payment of which he had the least security.

II. Parol evidence was admissible to show that the agreement to extend the time was made upon a good consideration, and what the consideration was. (*Frink* v. *Green*, 5 Barb. 455, 58, 59; *McCrea* v. *Purmort*, 16 Wend. 460, 473; *Goodell* v. *Pierce*, 2 Hill, 659, 661; *Murray* v. *Smith*, 1 Duer, 412, 428.)

1. The evidence offered did not contradict the written agreement, or tend to contradict any fact it recited. It tended to supply the consideration which the written agreement wholly omitted to state, and thus to support the contract.

2. If the court below was right in holding that the written agreement did not on its face, state a consideration, then it certainly follows that the evidence was admissible,

to show that there was a good consideration for a contract which expresses none. (*Goodell* v. *Pierce*, 2 Hill, 659, 651.)

III. The agreement to extend the term of payment being valid, discharged the endorsers. (*Fellows* v. *Prentiss*, 3 Denio, 512.).

*H. Boardman Smith*, for the respondents. ·

I. By the written agreement the parties applied the $70 upon the principal of the note in question, and not to the payment of interest in advance. (*Hunter* v. *Osterhoudt*, 11 Barb. 33, and numerous authorities cited.) The agreement to extend was therefore *nudum pactum*. (*Gibson* v. *Renne*, 19 Wend. 389; *Miller* v. *Holbrook*, 1 Wend. 317; *Farrington* v. *Bullard*, 40 Barb. 512; *Kellogg* v. *Olmsted*, 28 Barb. 96; *Pabodie* v. *King*, 12 J. R. 426; *Schroepel* v. *Shaw*, 5 Barb. 580; *Converse* v. *Kellogg*, 7 Barb. 590; *Keeler* v. *Bartine*, 12 Wend. 110.) And the maker waived no right to apply this payment wholly on the larger note, for· the reason that he had no such right to waive. He could not compel the plaintiff to receive part payment of either note. But what if he could, the application of the payment upon the smaller note (both notes being past due) was only a payment he was theretofore under legal obligation to make, and the making it upon one note instead of the other was no harm to the maker or benefit to the plaintiff, which the law will recognize as a valuable consideration. (*Tryon* v. *Jennings*, 12 Ab.· 33, and authorities cited; 22 How. 421; 12 Wend. 110.) It was Wait's legal right to apply this same money to the payment of some other credi-tor. Will it be claimed that a waiver of that right and payment to plaintiff would constitute a valuable conside-ration for an agreement to extend? (See 1 Parson's Con-tracts, 363, and cases cited—nss; 2 Parson's Contracts, 130, 131, and note R; 13 Ab. 101.)

II. If, then, the written agreement was *nudum pactum*

and void, because it applied the payment upon the principal instead of making it a payment of interest in advance, it was not competent to make a valid instrument out of a void one, by parol proof, which varied and contradicted the written instrument. It was not necessary that the agreement should be executed by both parties; its execution by the plaintiff, and acceptance by the maker, was an execution by him also. (16 Wend. 466, 465.) It is important to observe that the referee finds that the parties to the agreement had fully discussed and considered the subject of such consideration, and how the $70 paid on the note in suit should be applied, and had fully and carefully stated such consideration in the agreement, &c. It can not be said that the parol evidence was competent, because the contract does not specify in terms that the payment should be applied upon the principal, for no rule of law is better settled than that parol evidence is equally as inadmissible to vary the legal effect of a writing as to vary its express terms. (2 Seld. 33; 9 Cow. 747; 5 Wend. 187; 2 Den. 285; 11 Barb. 592; 8 Johns. 189; 14 Wend. 26; 27 Barb. 489; Cowen & Hill's Notes, part 1, 384.)

III. No stand could be made by the defendant's counsel upon this point but for the specious pretense that the evidence was competent to vary the consideration clause of the agreement. The authority principally relied on is the leading case of *McCrea* v. *Purmort* (16 Wend. 460), in the court of errors. Though the reporter's note of that case reads "the consideration clause of a deed is open to explanation by parol proof," the able and exhaustive opinion of Judge COWEN, marks very clearly the broad distinction between that case and the case at bar. Within that authority this instrument, if valid, created a right (i. e., the right of the maker to the extension), and the expressed consideration "gives effect to the operative words of the conveyance." How then was the parol evidence any more competent than if the stipulations had been inverted, and the instrument had read "in consideration of Halliday's

agreement to extend time of payment to such a day, I, Wait, agree to pay $70 upon the principal of this note." Could Wait tender the money before the day named, and disprove the agreement to extend, because it stands in the writing in the position of a consideration clause? The acknowledgment in a policy of insurance and receipt of the premium cannot be contradicted by parol, because such evidence affects the operative words of the instrument. (25 Barb. 192.) So Denio, J., in 3 Kern. 517, holds, citing authorities, that the consideration clause of a deed of bargain and sale can not be contradicted by parol evidence which will affect the operative words of the conveyance. But an adequate consideration is no more necessary to a deed of bargain and sale, than to an agreement to extend time of payment. And while an ordinary receipt, which is mere evidence of a fact, may be contradicted by parol proof, not so a release, which extinguishes a right, and therefore contains the operative words of a contract. (4 Seld. 402; 5 Duer, 294, OAKLEY, CH. J.) A receipt of wheat in store is not subject to explanation by parol. (4 Hill, 104.) A receipt of a note on account, without recourse, is not explainable by parol. (5 Sand. 568.) The consideration clause cannot be varied by parol, for the purpose of altering the effect of the deed. (*Morse* v. *Shattuck*, 4 N. H. 229; *Gridley* v. *Grubbs*, 1 J. J. Marsh, 388–9–90.) See the authorities digested, and the law stated to be that " the consideration clause cannot be varied by parol proof to change the legal effect of the instrument." (Cowen & Hill's Notes, 216, 217, 1,442.) Though otherwise, where the operative words are not sought to be changed. (Id. 1,441 and authorities.) A receipt in the nature of a contract cannot be varied by parol. (Cow. & Hill's Notes, 1,439.) " For the purpose of maintaining the character of the deed, as imported by its operative words, the consideration clause is conclusive." (Cow. & Hill's Notes, 1,451, and authorities cited; 16 Wend. 474, COWEN, J.) In the case at bar the written agreement was not only drawn up by Wait,

the maker, but the endorsement was made on the note by him, and shows, just what the writing shows, that the talk of applying the $70 as an advance payment of interest, was abandoned by the parties.  The parol evidence offered would be incompetent as contradicting the endorsement, let alone the written agreement.  (14 Wend. 116, approved; 4 Seld. 406; *Hard* v. *Bissell,* 1 Root, 260.)

IV.  But concede that the endorsement could be explained by parol, so far as to disprove the payment of the $70, can it be seriously claimed that parol proof is competent to engraft a special contract upon it as to the particular application to be made of the moneys, when such application is inconsistent with, and directly the opposite of the legal effect of the general endorsement as made, and make the endorsement (by reference) a part of the written agreement, even it would be as completely protected from contradiction or explanation by parol proof as any provision of the contract.  And by the inexorable rule of law the evidence must be excluded, when, as here, it is inconsistent with the writing.  (6 Barb. 458, and authorities cited; Cowen & Hill's Notes, 1452, 1460, and authorities cited.)  Or when it affects the operative words of the instrument.  (See authorities before cited.)  And the rule rigidly excludes " any other evidence of the language used in making the contract than that which is furnished by the instrument itself.  It excludes the colloquium, or oral negotiation, leading to the contract which the parties consummate by the writing." (COMSTOCK, J., 3 Kern. 573; 1 Green. Ev. 316, 321, 277, 282, 297; Cow. & Hill's Notes, 1471, 1473; 1 Metc. [Ky.] 285; 16 W. 474.)  In the case at bar we may concede the payment of the $70 might have been contradicted.  That was the fact.  But the application which the parties contracted should be made of the money was not the fact, but the agreement, the " colloquium."  So in 7 B. Monroe, 73, parol proof was excluded of the application which the parties had agreed should be made of the moneys. It cannot be replied by appellant's counsel that the case is

subject to any other rule, because he offers the evidence to sustain the instrument rather than destroy it. Parol evidence is no more competent to make a void instrument valid than to make a valid instrument void. In most of the reported cases the evidence was offered to impeach a valid instrument. Hence the language of many cases is, "parol evidence is incompetent to defeat a conveyance," or a "valid instrument," &c. The rule, however, is the same when the evidence is offered to support, as when offered to defeat the written instrument. In 4 Cow. 427, parol evidence was offered to vary the consideration clause, to support a void deed. The evidence was held equally as incompetent as if the evidence had been offered to defeat a valid conveyance. (3 Kern. 517, DENIO, J.; *Watts* v. *Grove*, 2 Scho. & Lef. 492, 501.)

V. And parol evidence is no more competent for these defendants than for the maker. The very question here is whether Wait, the maker, had a defense which he could successfully interpose as against the holder; and the question of parol evidence is to be determined in the same way as if the action were between the holder and the maker. Besides, parol evidence is incompetent as between the parties and their privies. These defendants are privies of the maker, by well settled rules. (18 N. Y. 463; 15 N. Y. 505; 18 B. 1, 405; Cow. & Hill's Notes, 1442, and authorities cited.)

VI. Nor can the defendants say that the parol evidence was admissible to show that, notwithstanding the writing, the maker could have had equitable relief, by reforming the contract. He would have had no status in a court of equity, except upon allegation of fraud, accident or mistake. But

1. The parol evidence was not offered for any such purpose. No such pretense was made or thought of upon the trial. The right to the evidence was insisted on only as a common law right. If inadmissible at law, but admissible to show an equitable right to reform the writing, the

defendants should have put themselves unequivocally upon that ground at the trial or the rejection of the evidence is not error. (24 Barb. 615; 5 Sand. 55; 3 Kern. 583, DENIO, J.)

2. The defendants have not set up any counter-claim or equitable defense in their answer. Before they could have been entitled to the parol proof they must have averred everything which would have been essential in a bill in equity to reform a written agreement. (3 Com. 19, 38, BRONSON, J.; Van Sant. Pl. 472; 1 Barb. Ch. Pr. 137; 22 Barb. 154; 17 Barb. 530.) They must, in a proper manner, give the plaintiff his day in court, when he is called upon (as he was not here) for what he has to say against the granting of such relief. (15 Barb. 365–95.) And until that is done, certainly the referee's rejection of a defense not pleaded would not be subject to review.

3. The proposed evidence would not have established any claim to such relief. The negotiation in reference to payment of interest in advance was abandoned. The endorsement shows it, and the written agreement also, both drawn by the maker of the note. (3 Com. 19, 37; 29 Barb. 597; 10 id. 9; 4 id. 279; 8 id. 537; 9 id. 532.)

4. But concede that this proof offered would have shown a *prima facie* right to relief, it is manifest it might do very great violence to the plaintiff's rights to admit it, for when the defendants seek this relief in the proper formal way, the plaintiff may show, for example, 1st. That he never signed the writing. He was not called upon to dispute it, as the case stood; or, 2d. That the sureties assented to the extension. 3d. That he reserved his right of action against the endorsers. (1 Seld. 172.) 4th. That the agreement to extend was procured by connivance with the sureties; or, 5th. Made under a mistake or fraud, as to Wait's solvency, for example; or, 6th. That the endorsers were indemnified; or, 7th. That they were not in fact sureties; or, 8th. That the $70 was received in ignorance of the law, connected with surprise or misplaced confidence. (Willard's Equity, 65–66.) Or, 9th. Under a mutual mis-

take as to the law. (6 Paige, 189, &c.) Or, 10th. Plaintiff did not know the defendants were sureties. (5 Barb. 378.) Or very many possible reasons, which would in equity prevent the reformation of this contract.

5. But the proof affirmatively shows that Wait and the first endorser were then insolvent. Would a court of equity entertain a bill to reform a contract made under a mistake of law, brought by a bankrupt principal for the only purpose of letting out his sureties, under circumstances such as these? And if that be no more than doubtful, will they let in this evidence to accomplish the same thing by indirection? (13 Wend. 377; 8 id. 194.)

6. Or if the court would entertain such a bill, would it not be upon the primary condition of equitable relief, that the maker, or those for whom he would be acting in such a proceeding, should themselves "do equity" by paying this plaintiff his honest dues.

7. But how can these appellants have any equity or interest in the question of the reformation of this contract. If they had paid the note and sued their principal, could he have defended against them, by proceeding to reform this contract. This is the only question. (1 Seld. 172; 12 Eng. L. & E. 162; 1 Parson's Notes and Bills, 241, and authorities cited; 7 Hill, 250; 10 Paige, 11.) But the referee affirmatively finds that there was no mistake here. And it affirmatively appears that the defendants had security.

VII. But grant that there was accident or mistake here, and of such a character as to entitle the defendants to equitable relief, they must institute a direct proceeding for relief. (*Davy* v. *Pendergrass*, 5 B. & Ald. 187; Eng. Com. L. 7, p. 62; ABBOTT, CH. J.; *Bulteel* v. *Parroll*, 8 Price, 467; 2 Am. Lea. Ca. 151.)

VIII. But this written agreement was put in evidence by the defendants, without allegation of fraud or mistake; and having thus offered it themselves, they cannot be allowed to contradict it by parol. " A defendant, after he has introduced paper testimony, cannot contradict it by oral

proof, when there is no allegation of fraud in the pleadings."
(22 Ill. 197.)

IX. If the parol evidence was inadmissible, it is an end
of argument, for the defendants must not only·establish a
valuable consideration, but an agreement binding and ope-
rative in point of law. (*Davy* v. *Pendergrass*, 5 B. & Ald.
187; *Bulteel* v. *Parroll*, 8 Price, 467; 2 Am. Lea. Ca. 151,
in 4th ed. p. 396; 6 Munford, 6; 7 Leigh, 501; 9 Yerger,
52; 3 Mason, 446–453; 7 Blackford, 240.) The extension
must be by a valid common law agreement.

X. Granting the evidence was competent, that the $70
was an advance payment of interest, it was still not a suf-
ficient consideration to sustain the agreement. (*Rayner* v.
*Fussey*, 4 Hurl. & Nor. 861; *Harnsburger* v. *Kinney*, 13
Gratt. [Va.] 511; 1 Shep. 202; 5 Wend. 501; 8 Pick. 458;
11 Wend. 319; 10 Pick. 129–1.) But both parties proved
upon the trial that the interest was not paid in advance.

XI. But if the interest were paid in advance, and if that
be a valuable consideration for this agreement, then the
agreement is usurious and void. (*Vilas* v. *Jones*, 1 Com.
274.) Upon negotiable bank paper the law allows interest
to be taken in advance for the benefit of trade. This rule
has never been extended further. (2 Cow. 678; 2 Kern.
223.) Could interest for five years be taken in advance
or for a shorter time, except under the immunities the law
extends over commercial paper? "In a case simply be-
tween debtor and creditor, the debt being undisputed and
due, and drawing interest, no valid agreement can be made
by parol to postpone to a future day the payment of the
debt. The debtor's promising to pay interest will be no
more than the law will compel him to do. If he agrees to
pay more, the agreement will be void for usury." (28
Barb. 96.) And an agreement for usurious consideration
is no defense, though fully executed. (See the authorities
discussed; 10 Ind. 227.)

XII. The point made, that the complaint states that no
part of the principal had been paid, has no force, because

.1. It does not appear, from the papers, that the point was raised upon the trial, as it must have been, to be available here. (18 Barb. 522; 19 id. 665; 14 Abb. 75; 20 N. Y. 61; JOHNSON, J.) It was, at most, a case of variance, which, by section 169 of the code, is not material, unless it has misled, and that must be proved, otherwise it must be disregarded on the trial, and most certainly after judgment. (10 How. 315; 1 Kern. 368; 20 How. 465; Code, sec. 170.)

2. *Per contra*, it does appear affirmatively that it was not made. The application of the $70 was, in effect, the only point to which their proof was directed on the trial.

3 But whether this allegation in the complaint was inserted by the pleader from inadvertence, or from a misconception by the plaintiff of the legal effect of the agreement, of which the pleader was ignorant, it can have no effect here. It certainly creates no record estoppel. The judgment is not against the record. No motion could be made in arrest by reason of any inconsistency between this judgment and the pleadings. Nothing can be claimed for it, then, except its asserted effect as evidence.

4. It can have no effect as evidence, because it does not allege any interest was paid in advance, nor indeed at all, but that "no part of the principal was paid." Besides, it is only material allegations which are to be deemed admitted, and a material allegation is one which the plaintiff is bound to prove to make out his case. (5 Sand. 54; 4 Sand. 668; 15 Barb. 400.) This negative allegation was surplusage—no part of plaintiff's cause of action. And an allegation anticipating or designed to "head off" a possible defense (as here that some part of the principal had been paid), is not in place in the complaint, or to have effect as evidence if put there. (36 Barb. 628, BALCOM, J.)

5. But granting that it is a material allegation, and proper in the complaint, its alleged effect as evidence is utterly demolished by the proofs of both parties. The plaintiff disproved it (and without objection), by putting in evidence the endorsed note where the $70 is applied generally. The

defendants disproved it by putting in evidence the writing, which shows the parties agreed to apply it upon the principal. Then the " admitted fact" was not a fact, and was so found by the referee, and nothing in law can override the established truth short of a technical estoppel.

6. But suppose this point were made upon the trial, it was the prerogative of the referee to amend the pleadings or to disregard the variance. Indeed, he is commanded to do so by the peremptory language of the code. (Sec. 170.) And at the most it was a matter in the discretion of the referee, and not subject to review upon appeal.

XIII. But it affirmatively appears that the defendants had indemnity for their endorsement, by the note endorsed by B. S. Sayer. And B. S. Sayer (as indeed the law presumes), was responsible. And B. S. Sayer was again indemnified. And having indemnity the defendants are not discharged by the agreement to extend. (12 Wend. 123.)

XIV. The $1,100 note endorsed by B. S. Sayer, was taken by plaintiff to hold as collateral simply, without any agreement to extend, and constitutes no defense. (5 Barb. 580; 7 Wend. 117, 289; 3 Com. 446; 1 Bos. 411; 36 Barb. 294; 5 Hill, 463; 3 Den. 512; 6 Duer, 294; 13 Wend. 374; Story's Prom. Notes, 536.)

XV. The maker of the note and James Sayre the first endorser, were insolvent before either of the notes became due. All the extension given was for the benefit of the endorsers, and with their assent. They cannot, therefore, avail themselves of this defense. Certainly the plaintiffs' equities are too strong to allow of any violence to those rules of law which enure to their protection.

DAVIES, J. The defendants, Hart and Beach, were the endorsers on the note of the defendant Wait, and they therefore occupied the position of his sureties. He was the principal debtor. Their engagement was that he should pay the note if duly presented to him, on the day

it became due, and if he did not then pay it, that they, on receiving notice of its dishonor, would pay it to the holder. The only defense set up in this action is that Halliday, the owner and holder of the note in suit gave time to Wait, the maker, for payment thereof after the same became due, without the knowledge or assent of Hart and Beach, the endorsers, and that consequently they have been discharged from their contract created by such endorsement.

If the holder of a note gives the maker further time for the payment thereof, without the consent of the endorsers, he discharges them from all the liability that they contracted by becoming parties to the note. (Per BEST, Ch. J., *Philpot* v. *Briant*, 4 Bing. 721.) A creditor, by giving further time of payment, undertakes that he will not, during the time given, receive the debt from any surety of the debtor, for the instant that a surety paid the debt he would have a right to recover it against his principal. The creditor, therefore, by receiving his debt from the surety, would indirectly deprive the debtor of the advantage that he had stipulated to give him. If the creditor had received from his debtor a consideration for the engagement to give stipulated delay of payment of the debt, it would be injustice to him to force him to pay it to any one, before the day given. If to prevent the surety from suing the principal, the creditor refuses to receive the debt from the surety until the time given to the debtor for payment by the new agreement, the surety must be altogether discharged; otherwise he might be in a situation worse than he was in by his contract of suretyship. If he be allowed to pay the debt at the time when he undertook that it should be paid, the principal debtor might have the means of repaying him. Before the expiration of the extended period of payment, the principal debtor might have become insolvent. A creditor, by giving time to the principal debtor, in equity destroys the obligation of the sureties, and a court of equity will grant an injunction to restrain a creditor, who has given further time to the principal, from

bringing an action against the surety. This equitable doctrine the courts of law have applied to cases arising on promissory notes and bills of exchange. (Per BEST, Ch. J., S. C.)

It was formerly held that any absolute and distinct agreement to give the acceptor time was considered as discharging the drawer and endorsers of a bill of exchange, without any distinction whether or not such agreement was founded on a sufficient consideration to bind the party making it; because, at least, the acceptor relying on the honor of the party making it, and that he would abide by it, would naturally relax in his endeavors to pay the bill before the enlarged time, and in the mean time might pay less accommodating holders. (Chitty on Bills, 9th Am. ed. p. 446, and cases cited.) But the same author observes, that, of late, a distinction has been taken and a new doctrine has sprung up, and been acted upon, namely, that even an express agreement not to sue, made after giving notice of non-payment, but *without sufficient consideration*, and without taking any new security, being *nudum pactum*, will not discharge the other parties, and several authorities are cited to maintain this proposition. Among others, the case of *Arundel Bank* v. *Goble*, decided in K. B. in 1817, which was an action by the endorsee against the drawer of a bill. The plaintiffs were the holders when the bill became due, and duly presented the same to the acceptor for payment, and wrote a letter to the defendant in due time, informing him of the dishonor, but that from the promise of the acceptor they expected the sum would be shortly paid. Afterwards the acceptor applied to them for indulgence for some months. They, in reply, wrote to the acceptor that they would give him the time, but that they should expect interest. The cause was tried on the home circuit before BURROUGHS, J., where it was contended by Nolan and Comyn for the defendant, that the indulgence to the acceptor discharged the drawer, but the jury found a verdict for the plaintiffs. On motion to the court of K. B.

for a new trial, the court held that, as no fresh security was taken from the acceptor, the agreement of the plaintiffs to wait without consideration did not discharge the drawer, because the acceptor might, notwithstanding such agreement, be sued the next instant, and that the understanding that interest should be paid by the acceptor made no difference.

*Philpot* v. *Briant* (*supra*), was an action by a holder, against the drawer of a bill of exchange. The defense was that time had been given to the acceptor, and that consequently, the drawer had been discharged. The plaintiff applied to the agent of the executrix of the acceptor, who said there was not sufficient personal property to pay the bill then, but that if the plaintiff would let the matter stand, the executrix would engage to pay the bill out of her private income. The plaintiff promised, provided the interest was paid, to give a reasonable time, and in pursuance of this agreement, interest was paid out of the private income of the executrix. On a motion for a non-suit, verdict having been taken for plaintiff, the common pleas discharged the rule, holding that the time of payment must be given by a contract that is binding on the holder of the bill; a contract without consideration is not binding on him; the delay in suing is, under such an agreement, gratuitous; notwithstanding such contract, he may proceed against the acceptor when he pleases, or receive the amount of the bill from the drawer or endorser. The case of *Arundel Bank* v. *Goble*, *supra*, is cited with approbation, and it is said that case was stronger than the present. The court said: "If the promise made by the executrix of the acceptor, be considered to be a promise to pay the debt with interest, out of the assets of the executrix, it gives no claim to the holder beyond what the bill gave him. The executrix was, before that promise was made, bound to pay principal and interest out of her testator's effects. If it is to be taken to be a personal promise of the executrix, it is void under the statute of frauds, not being in

writing." The court in its opinion, takes no notice of the fact that the interest was paid by the executrix out of her private income. The interest paid being due, the court must have regarded such payment as in discharge of a legal liability already existing, and that it formed no consideration for the new agreement to give time. It must also have been regarded by the court as an immaterial circumstance, that such payment was made out of the private income of the executrix.

Both these cases are cited by Judge NELSON, with approbation, in his opinion in the case of *Gahn* v. *Niemcewicz* (11 Wend. 312). In that case a party holding a bond and mortgage, over due, received from the principal debtor his promissory note at thirty days for the amount of the bond and the accrued interest thereon. The surety claimed that the receipt of such note was giving time to the principal, and therefore discharged the surety. It was held that the giving of the note therefor was of no benefit to the creditor, for she already had a higher and better security, and for the same reason it was no injury to the principal. He was already liable for the same amount on his bond. There was, therefore, no consideration of benefit on the one side, or harm on the other, to raise or give effect to the implied promise of delay relied on. The case of *Pabodie* v. *King* (12 Johns. R. 426), is approvingly cited as containing an apposite illustration of the principle that payment, even, of part of a debt already due, furnishes no good consideration for an agreement to defer a demand of the residue. It was in that case decided that payment of a part of a debt is not a consideration which will support a promise to forbear, because the payment of the surety was doing no more than the party was bound to do.

Upon the facts found by the referee in this case, we see that the debtor, Wait, was indebted upon two separate and distinct notes to his creditor, Halliday. Upon both he had sureties; and no facts are disclosed which show that the endorsers upon the note for $1,000 had any higher equity for the appropriation of the payment made on the 16th June,

1856, of $400, than the endorser upon the note of $500. Both notes were over due, and Wait, the maker, was legally bound to pay both; not one more than the other. He made the payment of $400 to his creditor, holding both securities; and, by the agreement made between them at the time of such payment, which was reduced to writing and signed by Halliday, the person to be bound thereby, the payment was distributed and endorsed, $330 on the note of $500 and $70 on the note of $1,000. From the finding of the referee, we are to assume that there was no other or different agreement in reference to the object of such payment and the appropriation thereof, than what is contained in said paper writing. There is no ambiguity in its terms. In consideration of $70 paid and endorsed upon the $1,000 note, and of $330 paid and endorsed upon the $500 note, Halliday agreed to extend the time of the payment of the $1,000 note until October first, then ensuing.

In making these payments, therefore, Wait but discharged the legal obligations already resting upon him; and neither the fact of such payments, nor the appropriation thereof, upon the two securities, furnished any consideration for the agreement to give time for the payment of the $1,000 note. If the $70 had been paid as interest on the $1,000 note, as is contended for by the counsel for the appellants, another and different question would be presented. That amount of interest was not *then* due upon the note, and its payment would have been a pre-payment of interest—the discharge of an obligation before its maturity. Such pre-payment of interest would undoubtedly have furnished a good consideration for the agreement to give time. We are not embarrassed, however, by that question. The fact is distinctly found by the referee, that after a discussion between the parties, Wait, expressing a wish that the whole sum paid should be applied on the note of $1,000, it was finally agreed that the sum of $70 should be applied on the note; and it is not found that it was to be applied in payment of interest, and we must therefore assume that it was made as

a payment, generally, on the note. Upon the facts, therefore, as found by the referee, there can be no doubt that his conclusions of law were correct, and that the plaintiff was entitled to recover.

The question remaining to be considered arises upon the offer of the defendants, and the ruling of the referee excluding the same. The offer was in these words. The counsel for the defendants proposed to show by the witness Wait, the maker of the note, that he requested the plaintiff to apply the whole sum paid on the note in suit, and in consideration that the witness would waive his right to have the same applied on the note in suit, and would allow the plaintiff to apply the sum of $330 on the $500 note, and $70 as interest on the note in suit, the plaintiff agreed to extend the time of payment.

The first objection which presents itself to this testimony is that it is an attempt to set up, by parol evidence, a different agreement between the parties than that contained in the writing produced. This showed the application of the whole sum paid, and that the sums paid and endorsed on each note were so paid on account of the amount due thereon generally, and not on account of interest. This could not be done. The written agreement merged all previous conversations and negotiations between the parties, and must be held to express the true agreement made between them, upon the matters therein referred to. (*Renard* v. *Sampson*, 2 Kern. 561.)

In *Fellows* v. *Prentiss* (3 Denio, 512), it was held that if a principal debtor gives the creditor his note for the debt payable on the day after date, the surety is thereby discharged. It was offered to show that the note was intended as a mere memorandum note, giving no extension of credit, and was intended only to fix the balance of the account. This evidence was excluded. The chancellor, in his opinion, says the written receipt and the notes showed that those notes were received in payment of the original account and interest thereon to that date. The circuit judge

very properly refused to allow evidence to contradict the written statement, and to show that one of the notes was a mere memorandum note, which gave no extension of credit. The referee, therefore, properly excluded the parol evidence offered to show that the $70 was paid as interest on the note of $1,000. Such testimony tended to contradict, vary, and alter the written agreement, and was inadmissible. But it is insisted, on the part of the defendants, that it is competent for them to show, by parol, that the consideration expressed in the written contract for giving time for the payment of the $1,000 note was not the true consideration for such extension, but that the same was the waiver of the right of Wait to have the whole of said payment endorsed upon the note of $1,000, and his consent to have $330 of said amount endorsed upon the note of $500. And it is urged, on behalf of the defendants, that such waiver and consent formed a good consideration for such extension, as such payment was beneficial to the plaintiff; and it is claimed that he had no security therefor. I think it may well be doubted if this would make out a good consideration, upon the facts developed in the referee's report and in the agreement. It would appear that the note for $500 was given on a contract for the sale by Halliday to Wait of a certain lot of land, and the inference is strong that possession of the land sold was retained by Halliday as security for the payment of the balance of the purchase money. It may, also, be inferred from the language used in the agreement of June 16, 1856, that Halliday there agreed to give up the possession of the lot sold to Wait, and that the consideration for such surrender was the payment of the $330 on the $500 note. He would seem to have been paid subsequently thereon the sum of $110— leaving only due of principal the sum of $60.

The case of *McCrea* v. *Purmort* (16 Wend. 460), and the authorities there cited, fully sustain the position that the utmost latitude is permitted to ascertain the true consideration named in a deed, and proof is allowed, to show

the actual consideration, although it be different in its nature and amount, from that named in the instrument. But Judge COWEN says in his opinion in that case, that enquiry is allowed "whenever that shall become material to a personal action between the parties." That this enquiry is restricted to the parties to the instrument is also apparent from the case of *Murray* v. *Smith* (1 Duer, 412.) The court in its opinion by BOSWORTH, J. says: "We think the law must be deemed to be well settled in this state, that either party is at liberty to show for any purpose, except to prevent its operating as a valid and effective grant, that its consideration was different, greater or larger than that named in it, and not wholly or at all pecuniary in a suit, by the vendor against the vendee to recover the actual consideration agreed to be paid, or in a suit brought by the vendee against the vendor on the covenants of seizin, or against incumbrances." To the same purport is the case of *Bingham* v. *Weiderwax* (1 Coms. 509.) All of the cases referred to, where the consideration has been enquired into, were between the parties to the instrument, and I have not found a case where such an enquiry has been permitted by persons not parties to the instrument or contract. In *Greenvault* v. *Davis* (4 Hill, 643), the supreme court held that such enquiry could only be permitted to the parties to the instrument. BRONSON, J. in delivering the opinion of the court, recognizing the rule that the consideration clause is open to explanation by parol proof, observes: "Whatever the rule might be if the question were between the original parties to the deed, the defendant is not at liberty to set up this defense against the plaintiff. The original parties knew of course, what was the true consideration for the grant, but it is not so with third persons. They have no means of knowing what consideration was paid, but from what the parties have said by the conveyance." That was an action on a covenant of warranty contained in a deed executed by the defendant, the plaintiff's grantor. On the trial, the defendant offered to prove that the consideration money,

paid by Price, the plaintiff's grantor, to the defendant, was less than the amount expressed in the deed. The judge excluded the evidence, and such ruling was sustained by the supreme court.

It follows that it was not competent for the appellants, not parties to the written contract between Wait and Halliday, to contradict, vary or alter the consideration expressed therein, and the testimony offered by them for that purpose was properly rejected.

The ruling of the referee upon such offer being correct, the judgment must be affirmed.

HOGEBOOM, J. The sureties were not discharged. There was no *valid* agreement for the extension of the time of payment. There was no payment of any sum which the party paying was not obliged to pay. The performance of an unqualified legal obligation by payment of part of a sum due upon a note, is not a valid consideration for the extension of payment of the remainder.

The written agreement shows no legal ground for a valid extension of payment. That agreement probably concludes the parties. They have put their contract in writing, and ought to be bound by it.

But even if the parol proof of consideration is admissible, it makes out no valid consideration for the extension of time. It merely shows that the debtor altered his mind about the mode of applying the payments, influenced, it may be, by the persuasions of the creditor, but not surrendering any legal right for any consideration paid. The proof does not come up to the offer. The extension of time was not *purchased* by the change in the application of the payments. If it had been, I am not prepared to say that such a change, where both debts were over-due, would be a sufficient consideration for a valid agreement to extend the time of payment. The judgment should be affirmed.

Judgment affirmed.