ANDREW ALBRIGHT, Appellant, *v.* LUTHER C. VOORHIES, Respondent.

*Sale of an interest in a partnership business — what is included in it — evidence of prior agreements is not admissible to contradict a written one — nor can the subsequent conduct of the parties be shown.*

Prior to September 30, 1875, the plaintiff and defendant had been engaged, as partners, in carrying on the manufacture and sale of rubber-coated harness trimmings, under certain patents owned by them. On that day they entered into a written agreement by which the defendant, for a consideration therein named, sold and conveyed to the plaintiff certain real estate; and, secondly, the undivided one-half part and interest of all the stock of finished and unfinished goods, raw materials, machinery, tools and fixtures of and belonging to the said company in and about its place of business or elsewhere, together with all and every thing, right and interest that pertains to or is in anyway a part or belonging **to** the said business; and, thirdly, all the right, title and interest of the said Luther C. Voorhies in and to the aforesaid business, the good will of the same and the exclusive right to manufacture and sell all goods made, or hereafter made, or manufactured under the said letters patent.

At the time this agreement was made, moneys arising from the business, to the amount of $13,000, were on deposit to the credit of the defendant, as agent, and there were collectible debts outstanding amounting to $27,000.

*Held*, that the amounts of the said deposit and of the said debts were included in the agreement and transferred thereby to the plaintiff.

*Elmendorf* v. *Lansing* (5 Cow., 468) and *Van Hagen* v. *Van Rensselaer* (18 Johns., 420) distinguished.

Upon the trial evidence was admitted against the plaintiff's objection and exception, tending to show what was said or understood between the parties concerning the said bank account and the said debts, previous to or at the time of the making of the said agreement.

*Held*, that this was error.

That it was also error to admit evidence to show what was done by the parties after the agreement had been made, as evincing the existence of a design different from that appearing from the agreement itself.

APPEAL from a judgment, entered upon the report of a referee.

*A. Q. Keasbey* and *Wheeler H. Peckham,* for the appellant.

*S. W. Fullerton,* for the respondent.

DANIELS, J.:

The judgment was recovered for the sum of $85,636.79 besides costs, upon a statement and settlement by the referee of the accounts of the parties as partners, previously engaged in business at Newark, in the State of New Jersey. Their business relations commenced in April, 1868, under an agreement by which the plaintiff, on behalf of the Rubber Coated Harness Trimming Company, and as patentee of a certain invention " granted to the said Luther C. Voorhies, party of the second part, the full, sole and exclusive right and liberty of making, using and selling the inventions named and included in the said patents, for and during the term of one year from the day of the date hereof ; " and agreed to sell and transfer to him " all the manufactured goods now in possession of said company at cost price, and the said Luther C. Voorhies agrees to purchase and take from the said company all the said goods at the said cost price, and to sell the said goods for the highest price which he can obtain, and in the manner which he shall consider most advantageous for the interest of all concerned, and to pay over to the said company one-half part of the profits derived from the sale of said goods." And it was further agreed that the term of the contract should be extended and continued for the additional period of three years from the 1st of April, 1869, at the option of the defendant. As an inducement for the making of this agreement, the defendant became obligated to invest in the business the capital required to carry it on, and as a matter of fact he afterwards made that investment. After the agreement was entered into the plaintiff acquired the residue of the stock of the company not then owned by him, and he and the defendant carried on this business substantially as partners, but in the name of the company, and they continued to carry it on in that manner until the 30th of September, 1875, when a further agreement was made and entered into by which the defendant, in consideration of the sum of $80,000, to be paid as therein provided, sold to the plaintiff

his interest in the business, and also agreed to convey to him certain real estate which had previously been used by the parties in the business. And the defendant afterwards transferred and delivered to the plaintiff the property and effects of the business, and conveyed to him the real estate mentioned and described in the agreement. After a portion of the consideration for the agreement had been paid and received by the defendant, the plaintiff, in November, 1876, commenced this action to rescind and set aside the contract made on the 30th of September, 1875, on the ground that he had been induced to enter into it by fraudulent representations made by the defendant concerning the state of the business and his own financial relations to it. After the suit was commenced the complaint was amended by presenting the additional ground for rescinding the agreement, that the defendant, in April, 1871, had presented his petition to the District Court of the United States for the Southern District of New York, to be adjudged a bankrupt, and that he was afterwards adjudged a bankrupt; and that an assignee of his estate in bankruptcy was appointed, to whom he assigned all and singular the property owned by him, but not expressed to include his interest in this business at the time of the presentation of his petition. The statement of these facts was followed by the allegation that the defendant fraudulently concealed them from the plaintiff, who acquired no information concerning them until about the month of December, 1878. And on these facts it was asserted in his behalf that he was liable to account to the defendant, or his assignee, only for the value of his interest in the business at the time when he was so adjudged a bankrupt. * * * [Here follows an examination entirely confined to the evidence affecting this question of the defendant's bankruptcy.]

As the plaintiff must be assumed, in view of this evidence and finding, to have become aware of the proceedings in bankruptcy before the agreement was made on the 30th of September, 1875, he has been precluded thereby from claiming any benefit or advantage by reason of those proceedings. For this reason, as well as the others which have been stated, the referee was right in declining to hold that the agreement could be set aside or annulled because of these proceedings in bankruptcy.

The evidence also in like manner failed to establish the truth of

the allegations that fraudulent representations had been made to the plaintiff to induce him to enter into the agreement of September, 1875. And to the referee's conclusions upon this part of the case no serious objections have been presented.

But while the referee should be sustained in the disposition made of that part of the case relating to the validity of the agreement, he proceeded to take and state the accounts between the parties and to ascertain the amount remaining unpaid from the plaintiff to the defendant upon the fact assumed by him under the evidence, that the agreement did not include the bank account in the business or the outstanding debts owing to the parties and uncollected at the time when the agreement was made. By this agreement the defendant undertook and agreed to sell and transfer to the plaintiff, besides the real estate already mentioned, " secondly, the undivided one-half part and interest of all the stock of finished and unfinished goods, raw materials, machinery, tools and fixtures of and belonging to the said Rubber Coated Harness Trimming Company in and about the place of business of the said company, on and near the corner of Prospect and Ferry streets, in said city of Newark, or elsewhere, together with all and every thing, right and interest that pertains to or is in any way a part or belonging to the said business ; and, thirdly, all the right, title and interest of the said Luther C. Voorhies in and to the aforesaid business carried on by the said Rubber Coated Harness Trimming Company, the good will of the same and the exclusive right to manufacture and sell all goods made, or hereafter made or manufactured, under the several letters patent granted to the said Andrew Albright by and from the patent office of the United States, for the manufacture of hard rubber coated harness and carriage trimming, except the letters patent dated February 13, 1872, No. 123,603."

At the time when it was entered into the amount of money arising out of the business and on deposit in a bank to the credit of the defendant as agent, was the sum of $13,000 and the debts owing to the business, which were regarded as collectible, amounted to about the further sum of $27,000 ; and evidence was taken by the referee, tending on the one side to prove that this bank account and this indebtedness were not included in the written agreement, while on the other side the evidence was as direct that they were

·designed to be included. The evidence first offered on the part of the defendant for this purpose was objected to by the counsel for the plaintiff, but this objection was overruled and an exception taken to the decision so made by the referee, and under this ruling the evidence referred to appears to have followed. And, according to the report made by the referee, he was in part governed by it in his determination that the deposits and accounts were not included in the settlement. To his decision and to his omission to find and hold the contrary, exceptions were taken by the plaintiff. And if he improperly admitted this evidence, he could not legally act upon it in making his decision, and the exceptions to this final disposition ·of the case were so far well taken. (*Hamilton* v. *N. Y. Cent. R. R. Co.,* 51 N. Y., 100.)

At the time when the agreement of the 30th of September, 1875, was made the defendant was the owner of the rights and interests, which he then agreed to sell and transfer. And if the agreement was made and executed in such a manner as not to include the bank deposits and these outstanding accounts, that fact should be :ascertained from the language of the agreement itself. If it should be so construed, then the defendant remained the owner of an undivided half of the deposits and of the outstanding accounts ; while if it should not be so construed, then he had no remaining interest in them, but they had been transferred and assigned to the plaintiff. For this reason evidence of an oral agreement or under-standing previously entered into was not admissible on the trial. The parties were required, legally, to stand upon their written con-tract as they had made it, and whatever preceding oral stipulations were entered into by them, is regarded by the law as having been ·embodied in the agreement so far as they were to remain effectual ·or controlling over the parties. It is true there are exceptions to this general rule, but neither of such exceptions have any relation ·to the present case, for the agreement was definitely reduced to writing, so far as it was to be operative and binding upon these parties. The rule upon this subject is that " the written agreement merged all previous conversations and negotiations between the parties, and must be held to express the true agreement made between them upon the matters therein referred to." (*Halliday* v. *Hart,* ·30 N. Y., 474, 493.)

In *Colwell* v. *Lawrence* (38 N. Y., 71, 73) the same legal principle was followed where it was said in the opinion of the court that "the rule is well settled that all conversations had prior to the execution of a written instrument become merged in the instrument when executed." And this was further sanctioned in *Dent* v. *North American Steamship Company* (49 N. Y., 390), where the rule was stated to be that "facts existing at the time of the making of the contract may, therefore, be properly considered for the purpose of interpreting this language, but no evidence of the language employed by the parties in making the contract can be resorted to except that which is furnished by the writing itself." (Id., 395.) And in *Baldwin* v. *Humphrey* (44 N. Y., 609), where it was insisted that a further agreement had been made beyond that which was reduced to writing, the court, concerning this position, held that: "It is true that it does not contain such an express agreement, and if they had not signed it, it is doubtless true that it would have been optional with them to perform or not on their part; but they have signed the paper, and hence are bound to perform all that which it may be fairly implied from the terms, or language used, they agreed to perform. It is a rule of construction that whatever may be fairly implied from the terms or language of an instrument is in judgment of law contained in it." (Id., 614.) This rule clearly entitled the plaintiff to the exclusion of all evidence tending to show what might have been said or understood between these parties on either side concerning the bank account and the outstanding accounts in the business previous to or at the time of the execution of their written agreement. It was not only improper and erroneous for the referee to receive this evidence, but after having received it, to act upon it as a part of the basis of his decision in the disposition of the case.

It was further held by him that the agreement itself, without reference to the oral proof, was not intended or designed to transfer the defendant's interest in the bank account, or in the other outstanding accounts of the business. But this agreement was evidently made for the purpose of discontinuing the defendant's interest in or connection with this business. His presence in it had become objectionable to the plaintiff, who desired to obtain the control of the business himself. These were attendant circum-

stances existing at the time when the agreement was entered into, and its object and design was clearly to secure these results. And the agreement itself, although not very clearly drawn or expressed, was sufficient to accomplish this end. For it not only bound the defendant to the sale and transfer of the undivided half of the stock, finished and unfinished goods, raw materials, machinery, tools and fixtures belonging to the company in and about the place of business, but, in addition to these rights and interests, it was declared to include all and everything, right and interest, that pertains to, or is in any way a part or belonging to the said business, and also all the right, title and interest of the defendant in and to the business, and to the good will of the same, and the exclusive right to manufacture and sell all goods made, or afterwards made or manufactured, under the several letters patent granted to the plaintiff. It has been insisted in support of the judgment, and that view was followed by the learned referee, that the last clause of the second article of the agreement should be construed as no more than a general repetition of what was stated in the preceding language. And this view is supposed to have been sanctioned by *Elmendorf* v. *Lansing* (5 Cow., 468), but it is not, for there the general language of the bond was limited to the object and purposes of the decree upon which, according to its own language, it was made and executed, while here there was no such preceding standard to which reference could be made to determine the extent of the agreement intended to be entered into by the parties. The case of *Van Hagen* v. *Van Rensselaer* (18 Johns., 420), also fails to sustain this as a proper view to be taken of the language of this agreement. It is, on the contrary, an authority for a broader construction so far as the rule was followed, that " the matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit a larger sense, and therefore the generality of the words used shall be restrained by the particular occasion." (Id., 423.) And applying this rule to this agreement requires such a construction of its language, so far as that may be justified by what has been employed, as to carry the main object and purpose of these parties into effect, and that was to place the business in the hands of the plaintiff, as the representative or the owner of the rubber company, and to discontinue the defendant's

connections with and relations to it. The language which was employed and made use of to express the agreement of the parties was more adapted to this end than to add a general description of what had before been particularly expressed. For such a description it was not needed, for the preceding part of the agreement was made unmistakably clear, and to limit the last clause to what was so expressed would rather tend to confuse than elucidate it. The language employed was not adapted to the expression of that object, but it was to making an additional disposition beyond that previously included in the instrument. The paragraph was so drawn and expressed as not only to include what was specially mentioned, but to add to that whatever other right or interest there might be pertaining to, or which was in any way a part of, or belonged to the business. The phrase " together with," by which this addition to the paragraph was made, was an expression of the design to add more to the agreement than what had already been mentioned. It was to make an addition to it and to render it so broad as to include everything, right and interest, pertaining to or in any way a part of or belonging to the business. And as such it was adapted to the general purpose and design of the parties, to be carried into effect by the making and execution of the agreement. Upon this subject the rule has been stated to be that, " in all these cases the court will endeavor to give to the contract a rational and just construction ; but the presumption of greater or less strength, according to the language used, or the circumstances of the case, is in favor of the comprehensive over the restricted, the general over the particular, the common over the unusual sense." (2 Pars. on Cont. [6th ed.], 501.) And construed in this manner, as this part of the contract seems to be required to be construed, it had the effect of transferring and assigning all the defendant's interest in everything pertaining to or in any way a part of or belonging to the business. And the first clause of the fourth article of the agreement further expressed that to be its intention. The bank account did pertain to the business. It had been made up by deposits of money collected in the course of its transactions, and the outstanding accounts were a part of and belonged to the business, and so did the bank account itself.

Evidence was given tending to show what had been done by the

parties after the agreement was made evincing the existence of a different design, and facts of this description have been relied upon in favor of each of the parties supporting, as well as opposing, the construction given to the contract by the referee.    But as the agreement was clear and definite in its language, it afforded no room for the admission or consideration of evidence of this description. (*Hill* v. *Priestly*, 52 N. Y., 635, 636 ; *Morss* v. *Salisbury*, 48 id., 637.)

The views adopted and followed by the referee in the admission of, and in his action upon, the oral evidence received to show a preceding understanding of these parties, and in the construction of the agreement itself were erroneous, and operated so far to the prejudice of the plaintiff as to exclude him from the right to one-half of the bank account and of the other outstanding accounts created in, pertaining to, and connected with the business.    And it may be that he also erred in further following this theory and charging the plaintiff with the money paid out on account of what is called the purchase of the Welling patent.    But whether that is the case or no, it is not necessary now to determine or consider, for the errors fallen into by the referee and already mentioned will require for their correction another trial of the action.

It was not determined by this court in considering the right of the plaintiff to discontinue the action that the defendant was entitled to recover anything against the plaintiff upon the claims preferred by him as not included in the written agreement of September, 1875.    All that was then held, or was intended to be held, was that in the state in which the action appeared to be presented, it was not one which could be discontinued without the assent of the defendant himself.    The disposition which was made of that appeal does not, therefore, stand in the way of the consideration of the rights of the parties as they appear to have been defined by the written instrument finally made and executed between them.

The judgment in the case should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.