THE PENNSYLVANIA COAL COMPANY, Respondents, v. THE PRESIDENT, MANAGERS, ETC., OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellants.

Where the issue is such that a party is entitled, on proper demand, to have the same tried by jury, and he omit to claim such right, he cannot afterward on appeal, object to the mode of trying such issue.

Where the complaint and prayer thereof are such as to embrace both equitable and legal remedies, the defendant may move the court to compel the party to elect on which part of the case he will proceed, or for which mode of trial or resulting relief he will go.

Or the court may strike out or dismiss that part of the complaint seeking mere equitable relief, leaving the remaining issues of fact to be tried by a jury.

The meaning and application of the term "*toll*" discussed by EMOTT, J.

Before a party has a right to detain for the payment of toll, the amount to be paid must be fixed and ascertained.

THIS action was brought by the Pennsylvania Coal Company, against the Delaware and Hudson Canal Company, in May, 1852.

The complaint alleged, that in August, 1847, the defendants entered into a contract with an association, known as the Wyoming Coal Association, to furnish transportation on its canal, to the boats of the association carrying coal.

The provisions as to compensation which the contract contained, were as follows :

The said canal company, its successors etc., charging and collecting a toll on the coal transported in pursuance of the agreement at a rate per ton, to be established in the manner following, viz.: On the first day of May, in each and every calendar year, the quantity of lump coal of the said Delaware and Hudson Canal Company, which shall at that time have been sold to, or delivered at Rondout, and to arrive by the said canal during the said calendar year, shall be ascertained; and from the average price thus ascertained, two dollars and fifty cents shall be subtracted, and one-half the remainder shall be the toll per ton, during such calendar year; except that if any discount or deduction, contingent or otherwise, shall be agreed upon, or contemplated in the contracts for

such cases, the said toll shall be reduced correspondingly to such discount or deduction as shall actually be made; but provided, nevertheless, that if, on the first day of May, in any calendar year, the quantity of lump coal of the said Delaware and Hudson Canal Company, which shall at that time have been sold, as aforesaid, shall be less than one-half of the estimated sales for one year, the toll during such year shall be calculated in the manner hereinbefore provided, on the average price at which the sales of lump coal for such year shall be actually made.

The complaint alleged that, in the year 1851, the plaintiffs acquired the rights of the Wyoming Coal Company in this contract, and were substituted for that company.

That in the then current year 1852 the contingency contemplated by the last proviso in the contract had occurred. The quantity of coal sold, or contracted to be sold, by the defendants on the first day of May in that year, was not one-half their estimated sales for the year, and therefore the toll was to be fixed upon the average price of the actual sales, and the plaintiffs insist that by the true construction of the contract, the toll is not demandable until the time when its true and proper amount can be determined according to the contract.

That the defendants, however, insist that tolls must be paid them at the time of the passage of its boats, and that they threaten to arrest and have arrested plaintiffs' boats.

The complaint states the negotiations between the parties and various facts as to their respective creditors' business, and the inducements for making the contract. The complaint prays an injunction forbidding defendants from withholding the use of their canal, and from hindering and delaying boats of the plaintiffs, and for other relief.

A supplemental complaint was put in, averring that defendants had put their order in force and had detained plaintiffs' boats. The consequences of such detention and the injury to plaintiffs were set out in detail, and plaintiffs asked for damages.

The defendants answered, denying plaintiffs' corporate capacity and interest in this contract. Admitting the prin-

cipal facts alleged, but denying various matters stated as to the registration, etc., and controverting the construction of the contract claimed by plaintiffs.

There was a preliminary injunction issued, which was dissolved or entered, and no appeal was taken from this order.

The cause was tried before Judge DAVIES, who decided in favor of the defendants' construction of the agreement, and dismissed the complaint. An appeal was taken from this judgment, and it was reversed. A second trial was had before Judge SUTHERLAND, who gave judgment for the plaintiffs, with costs.

The judgment declared the construction of the contract to be what the plaintiff claimed, and adjudged them damages; but ordered an injunction.

At the trial the acts incorporating plaintiffs and the contracts set forth in the complaint were proved. The plaintiffs proved, under objections and exceptions, damages to $1,000 by the detention of their boats for the payment of toll of 50 cents per ton claimed by defendants. They proved the time of opening the canal for every year since 1832 to 1860. They also introduced an agreement between the two companies, made in 1849, for joint management and sale of their coal, only to be made by the defendants. The agreement stipulated that either party might terminate the arrangement by notice, and that in 1851 plaintiffs gave such notice.

The plaintiffs rested on this proof.

Defendants then insisted that they had a right to insist on prepayment of tolls, and to prevent the passage of boats through the weigh-lock until they had prepaid their tolls; and, 2. That if the plaintiffs were right they had an adequate remedy by action at law triable by jury; and, therefore, moved for a nonsuit, which was denied and exception taken.

Defendants then gave in evidence their own acts of incorporation, etc., also various letters—the length of the canal—the time when the use of this canal commenced under the contract between these parties in 1850—the establishment of a weigh-lock at Hawley in 1852, and the rules and regulations of the canal from 1843 to 1846. They also proved that the

average price of the actual sales by them, in 1852, was $3.64 per ton.   The judge found as facts, that on May 1, 1852, the coal sold by defendants was less than half their estimated sales for the year, and that the average price of sales for the year was at least $3.84, but such price was not ascertained or ascertainable until the close of the year.

As law he found: 1. That by reason of the impracticability of ascertaining the average price of all the sales by May 1, or before the end of the year, defendants were not entitled to charge or collect any toll for coal transported until the end of the year.   2. That although it appeared that the toll collectible by the agreement did actually exceed 50 cents per ton, yet the defendants were not entitled to insist upon or collect the same before the end of the year. 3. That on these facts plaintiff was entitled to damages. 4. That these damages were $1,000.

The defendants excepted to these conclusions of law.

From the judgment at Special Term the defendants appealed to the court at General Term, where the judgment was affirmed, and they appealed to this court.

*John K. Porter*, for the appellants.

*Amasa J. Parker*, for the respondents.

EMOTT, J.   It is not necessary in the present condition of this case and controversy to determine whether the plaintiffs upon the facts proved, and assuming their construction of the contract to be correct, could maintain an action to enforce its performance, or to enjoin the defendants against its violation and in unjustly excluding the plaintiffs' boats from their canal.   The preliminary injunction which was granted in this aspect of the case was vacated upon motion, and no appeal was taken from the order dissolving it.   The supplemental complaint asked for damages for an actual breach of the contract, and the judgment responded to this demand and gave the plaintiff a money recovery only.   If the plaintiffs had brought precisely and merely such an action as the defendants insist this should have been it would have

resulted in a similar judgment. The only difference in the case would have been in the mode of trial. The question of fact as to the amount of damages would in that event have been submitted to a jury. But upon the case before us the mode of trial was immaterial, since the case states that damages to the amount recovered were proved without dispute, if the plaintiffs were right in law and entitled to damages at all.

The defendants, however, are not in a position to avail themselves of any objection to the judgment founded on the mode of trial. They did not apply to have the issue of fact tried by a jury, but moved at the trial to dismiss the complaint and terminate the suit altogether. The complaint contained allegations and a prayer for both equitable and legal relief. Conceding that the plaintiffs were entitled to one and not the other, the defendants should have asked the court below to compel the plaintiffs to elect on which part of the case and for which mode of trial and resulting relief they would go, or to strike out or dismiss that part of the complaint seeking merely equitable relief, leaving the residue presenting a case triable by jury.

Still, I deem it not improper to say that, in my judgment, this action could have been maintained in its equitable aspect if we assume that the plaintiffs are correct in their construction of the contract. I understand the learned counsel for the defendants substantially to concede as much, provided the agreement upon such a construction of it be not unreasonable or unconscionable, as he insists that it is. And I allude to this aspect of the case more particularly to say that I do not perceive the unreasonableness or unfairness of such a contract between these parties as the plaintiffs claim that they have made.

The defendants, when this agreement was entered into, were the owners of a canal whose capacity was, or was supposed by them to be more than adequate to the transportation of all the coal which their own mines could produce, or their own boats deliver. At the same time it was evident that the canal would never be required or used to any great

or remunerative degree for the carriage of passengers or of any other article than coal. It was therefore eminently desirable for the defendants to secure additional coal trade and transportation, and to induce other producers of coal to make use of their canal and to construct other communications connecting with it.

Perhaps it would not have been an unreasonable arrangement for them, in order to secure such a business, to contract expressly that the payment of their tolls or charges should be postponed in all cases until the end of the year, or some period after the passage of the boats. At least a court could not pronounce against such a contract, as so unfair as to be unfit to be aided or enforced. The counsel for the defendants assumes that his clients intended to make their tolls or charges payable in advance in all cases, and failed to do so in the contingency which happened in 1852, if they have failed, from inadvertance or mistake. But there is no evidence upon which to found any such assumption. There is no proof of the intention of the parties except what is to be found in the instrument itself, nor are there either allegations or proof that they have inadvertently or mistakenly made it what it is. It might of course have been more to the interests of the defendants to have had a contract distinctly providing for the prepayment of toll in all cases, but so would a higher toll have been more for their interest. We cannot presume that they intended or supposed they had made an agreement more beneficial to themselves than that into which they actually entered. Its provisions do not, upon any interpretation contended for here, shock our sense of fairness and justice, and our duty is to enforce them when we have determined what they are.

It will be observed that there is no express or formal covenant or promise in this agreement by the Pennsylvania Coal Company to pay a toll, and what is more important there is no time stated when it is to be payable. There are three measures of the amount of toll given ; first when the Delaware and Hudson Canal Company sell or contract to sell before the first day of May in any year, coal to the

amount equal to at least half their estimated sales for the year. In that case the rule is that two dollars and fifty cents is to be deducted from the average price of such sales, and one-half the residue is to be the toll per ton. Second, when the Delaware and Hudson Canal Company do not make sales of coal previous to the 1st of May to an amount equal to one-half their expected deliveries. In this event a similar computation is to be made to ascertain the toll, but the basis is to be the average of actual sales by the Delaware and Hudson Canal Company for the year.

A third case is where the Delaware and Hudson Canal Company make no sales whatever during the year. In this event the toll is to be calculated on the sales for the year of the Wyoming Association, or of their assigns, the Pennsylvania Coal Company, in the same manner as in the second case upon those of the Delaware and Hudson Canal Company.

It may be conceded that in the first of these three cases, the tolls are demandable and payable at the time of the passage of the boats. But this is not merely from the effect of the use in the contract of the words, " charging and collecting" by the canal company, nor from the effect of the word " tolls" in the contract, in describing the compensation for the use of the canal. Nor can these words or phrases control the context so as to compel a payment in advance, which would otherwise be deferred. The defendants' canal was a public highway, constructed under authority of the State, and by an exercise of its rights of eminent domain, and of course open to the use of all citizens upon making suitable compensation to the company constructing and owning it. They were authorized to exact this compensation by tolls, to be paid at the time of passing or using the locks, and not to exceed a fixed rate or amount. The charter of the company (Laws of 1823, ch. 238, § 12) authorized them to " demand and receive" of any boat passing their canal, " such tolls and rates as the managers shall think proper, at any lock or other convenient place," but not to exceed eight cents per mile per ton for coal, and half that sum for other loads. The next section expressly authorized the company to stop

or detain every boat until the master or owner should pay the toll. The length of the canal is ninety-five miles, and the toll or charge thus given by statute would be much larger than that stipulated by this contract could probably reach. If the plaintiffs had placed their boats upon the canal without any special agreement as to its use and the compensation therefor, they would of course have been subject to the tolls authorized by law, and the canal' company would "charge and collect," or "demand and receive" these tolls (the phrases may be considered equivalent) and might enforce their payment at once by detention. Even in this case however it does not follow that the tolls must be demanded and collected at the time of the passage of the boats, or not at all.

The persons using the canal which is the property of the defendants, would be liable to an action at common law for compensation for such use, and the statute tolls would afford the measure of that compensation. The additional remedy by detaining the boat in its passage did not deprive the canal company of their right to an action to recover their tolls. (*Jordan & Skaneateles, Pl. R. Co.* v. *Morley*, 23 N. Y., 552.) The plaintiffs are liable at common law for the use of the defendants' canal, and the measure of this compensation is the toll or price agreed upon between the parties. This price was due whenever the agreement fixed it, and collectible or recoverable by action if not paid when due.

Nor do the words charging and collecting in this contract, any more than the equivalent words "demand and receive" in the statute, exclude the idea of collecting compensation at a future day, or the obligation of the plaintiffs to make such subsequent compensation, nor would it be contended that they limit the defendants to the special remedy of detaining or excluding boats. Nor, again, can I accept a similar conclusive inference from the use or signification of the word "toll." Toll is defined to be a compensation or payment in markets and fairs for goods, cattle, etc., bought and sold. (Jacob's Law Dict., Toll.) A tribute or custom paid for passage, or a duty imposed on goods and passengers traveilng public roads, bridges, etc.; a tribute for passage; a reasona-

ble sum due to the lord of a fair for things sold there which are tollable. (Burrill's Law Gloss., Toll, 1; Crabbe Real Prop., § 683.) It is defined by Webster, 1. A tax paid for some liberty or privilege, particularly for the privilege of passing on a bridge, or a highway, or for that of vending goods in a fair, market or the like; 2. A liberty to buy and sell within the bounds of a manor; 3. A portion of grain taken by a miller as a compensation for grinding. The derivation of the word, signifying the cutting or taking off a portion of a thing, points undoubtedly to an immediate payment or exaction, as by a miller from the grain brought for grinding, or by the lord of a fair or market from the prices of articles sold. Yet even in the case of tolls for a market, the proprietor may bring his action and recover them afterward. (*Corp. of Stamford* v. *Pawlett*, 1 Cr. and Jer., 81, and cases cited.) While in the case of a toll for the use of a highway or a bridge the word is used or applied in a manner more remote from its etymological sense and derivation.

It is very true that tolls ordinarily are payable on demand or when the benefit for which they are demandable is received. At common law a distress was incident to toll, or where the toll was for passage or the like, the passage could be refused until the toll was paid. So in charters, as in this case, a right is given to refuse the use of roads or bridges belonging to corporations, although public highways, until the tolls are paid. But it is also implied in all those cases, as will presently be seen, that the amount of such toll is fixed and certain. The argument for the defendants to show that in all the cases specified by the contract now before us, the compensation for the passage of the plaintiffs' boats must be made contemporaneously, rests almost entirely upon the force of the word "toll" in the contract as necessarily importing an immediate payment. It is one answer to this argument that the compensation for which this contract stipulates would be legitimately and properly called toll although not paid or exacted at once. A case might readily be supposed in which the whole compensation for a year's use of the canal

might be payable in gross, as toll for a year, and not tolls for the several passages.

It might depend as to amount upon conditions or contingencies which could not be determined until the end of the year, and for this reason as well as because it was a compensation in gross for the whole period, it might indisputably be payable only at the end of the period. Yet this compensation might properly be termed a toll, at all events in such an agreement as this, and would answer the definitions which have been already quoted, however unusual might be such a method of computation or payment. It is another equally sufficient answer to the argument that whatever may be the ordinary use or acceptation of such a word, it must be construed and qualified in such a contract as this by the circumstances of its connection and use in the instrument. We are not interpreting a grant by the sovereign power of a right to take tolls, leaving the time and mode, and, it might be, the amount of payment, to be ascertained or implied from the mere term itself; but a contract between two parties for the use of the property of one by the other, rendering a compensation which they style a toll, but for the time, manner and amount of whose payment they have stipulated by their contract. Where such stipulations exist, or are necessarily inferable from the positive agreement of the parties, they will necessarily control any mere legal inference from the use of terms or from the ordinary definition of such a word as tolls. Undoubtedly, as the defendants possess the right by their charter to detain boats until the toll or charge for the use of the canal is paid, and as no credit or delay of payment is mentioned in the contract, the stipulated toll is due in every case as soon as the amount is determined.

But toll must obviously be fixed and certain where it is demanded. It is true that when the right to take toll is granted, the amount need not be fixed by the grant, and a grant of a right to take reasonable tolls is valid. (*Corp. of Stamford* v. *Pawlett*, q. s.) But in any case before toll can be exacted, the amount must be determined, either expressly by the grant of the franchise to toll, or by the act or declara-

tion of the party entitled, in the exercise of a discretion conferred, to take reasonable tolls, or by agreement between the parties. In the first case provided for by this contract the amount of toll is rendered certain by the agreement, and therefore it becomes due on demand in the absence of any agreement to postpone its payment.

The proof shows that the canal has for many years been opened for navigation and business about the 1st day of May in each year, not in any year before the 15th of April. Before navigation begins, therefore, the period arrives at which, in the event of contracts by the defendants to an amount equal to half their estimated annual sales, the price is fixed upon which the toll is to be computed, and thus before the plaintiffs' boats would begin to use the defendants' canal, the tolls for its use would be settled for the year and could at once be exacted.

But the question as to the residue of this agreement upon which the parties are at issue is whether when the defendants do not before the 1st day of May in any year make contracts to the extent of half their estimated annual production, or where they make no sales at all during the year, the toll or compensation to be paid by the plaintiffs for the passage of their boats according to this agreement, can be ascertained or determined before the end of the year, and if not, whether any sum can be exacted from each boat when it passes.

The plaintiffs' right to the use of the canal, and the defendants' right to compensation, are both regulated and to be measured by their mutual agreement. It needs no argument to show that when the price of coal by which the rate of such compensation is to be fixed, is the average price of actual sales, either of the defendants' or of the plaintiffs', such compensation cannot be determined until these sales are made. A distinction was attempted between sales for the year, and sales during the year, and it is contended that while the latter signifies all the sales from time to time during the year, the former means sales made to customers to supply their needs during a whole year. There is undoubtedly some force in the suggestion, as also in the fact that while the contract

speaks of sales for the year, it speaks of tolls during the year. There is, perhaps, some implication here that the tolls are to be continually demanded and received, while the sales may be all made at one time, although to supply the needs of a year. But the year thus spoken of is the current business year, or what may remain of it, and not a calendar year from the dates. And the difficulty in making a practical application of this view of the case to the contract, is that there is nothing to indicate at what particular period after the 1st of May, or after what proportion of sales for annual supply have been made, the average of such sales may be taken.

In the first event stipulated by the contract, the average is to be made upon all the sales or contracts made before the first day of May, provided half the production of the company for the year has been disposed of by that time.

If, however, we pass that limit, there is no other day set, and no other amount of sales specified, after or upon which such a computation is authorized. Sales or contracts for sales may be made to customers at any time during the year for their supply of coal for the residue of the year.

If contracts for at least one-half the estimated product of the mines of the defendants are not made by them before the first of May, the price of coal by which the tolls are to be computed is to be taken from the average of actual sales.

Even conceding that sales for the year does not mean sales during the year, the contract calls for the average of all these sales. There is nothing in the agreement to show when or by what time short of the whole year they are to be made, or that the computation may be made at any particular period and the subsequent sales rejected from the account.

There is not any point of time fixed for taking the average of actual sales, previous to their entire completion, nor is there anything which authorizes us to assume any period of time before the end of the year, at which we may assume that all the sales of which the average must be taken will have been made.

Whether the expression " sales for the year " means sales to be completed within the year or all the sales made during the year, their average cannot be ascertained until they are made, and of course the tolls to be computed from that average cannot be determined before that time.   This renders it impossible to fix the toll to be charged and collected according to this contract, until these sales are made, if not until the end of the year.   Certainly it was impossible to fix the toll for the year in which this suit was brought at the time when it was commenced.   We must therefore inquire whether, although the amount or rate of toll cannot be determined yet, the defendants may exact a charge estimated to be approximately or nearly what the tolls will be under the contract, before allowing the plaintiffs' boats to pass through the canal.   In my judgment the contract does not authorize any such course ; it authorizes the defendants to charge and collect certain tolls whenever they are due, and it furnishes the means of settling their amount.   But it does not authorize the charge or the collection of any other sums or amounts than these specific tolls.   If the amount of the tolls were left at large or to the discretion of the canal company, subject to review or correction, or to drawbacks and deductions afterward, the case would be widely different.   But this contract does not provide merely for the payment of a toll to be reasonable in amount, or to an amount to be set by the canal company but not to be unreasonable.   It provides for the ascertaining and fixing that toll in a specific manner.   It is silent as to the time and mode of payment, and it follows that the toll or compensation for the use of the defendants' property is due when the property is used and the amount of compensation ascertained by the rule of the contract. An uncertainty as to the amount of toll at the time of using the canal, certainly would not avoid the contract, but since the contract contains the means of arriving at certainty as to the payment for which it calls, such payment cannot be compelled until the required return can be made certain by those means.

The clause requiring a reduction of the tolls in case a deduction or discount is made from the price established by the sales or contracts made before the first of May, does not militate against this construction. In some cases these deductions are or can be ascertained with the tolls. The contract speaks of discount or deduction agreed upon or contemplated in the contracts for sale. Even if the discount be contingent yet the contingencies may occur as or before the tolls become demandable. If not, however, still the charge is fixed and declared in the first instance. It is certain at the time when the right to it accrues, even if the defendants are liable to be called upon to make a deduction from it afterward. It is not left uncertain and indefinite until the contingency occurs upon which the plaintiffs are entitled to a reduction or return.

Here, as in the other part of the argument, the main reliance of the defendants is upon the word charging and collecting tolls. I cannot however read these words as meaning charging and collecting compensation for the use of the canal according to the discretion of its owners, until the toll which they are really authorized to exact can be ascertained.

Even if the word toll in its proper sense and use implied immediate payment, yet as I have already said, the manner in which it is used in this contract, would control that sense and give to it a different meaning. A word, ordinarily meaning a sum payable immediately, when used in a connection which involves delay in determining the same, and, hence, in the time of its payment, must acquire a modified sense.

It cannot be construed with such technical exactness as to do violence to the rest of the agreement in which it occurs.

It will be observed that the agreement in question under the construction which has now been placed upon it, does not give to the Pennsylvania Coal Company the option of deferring the payment of all tolls until the end of the year. It is not when they, but when the Delaware and Hudson Canal Company have not made sales before the first of May in any year to the amount of half their estimated production for the year,

that the average of actual sales and not of contracts is made the basis of tolls. It is evident from the case, and is well known to those familiar with the trade, that the manner of conducting it, is by sales contracted to be made in anticipation of the products of the mines, and in large quantities deliverable through the year.

If such contracts are not or cannot be made to any considerable extent, it indicates a dull or diminished demand, or an unsettled market. This would affect both companies alike. The plaintiffs obtain no modification of the terms of the contract in consequence of it, until the defendants have ascertained that their business must yield to such a state of things.

The basis upon which the defendants are to be paid for the use of their canal, is evidently intended to be the price of coal for the current season. That price may be determined by their own sales and contracts, but when prices are so uncertain, or the market so dull, that it cannot, as is usual, be set for the season by contracts in advance, it is not unjust to compel both these parties to submit to the consequences. The defendants will not omit to make early sales in advance according to the common custom of the trade, unless for controlling reasons, such as either the insufficiency of the demand, or the insufficiency of the price at the opening of the season. In either event, if necessity, or a regard for their own interest, prevents the defendants from making their ordinary sales, and so fixing the standard of tolls in any year, the same controlling cause will involve a postponement of the payment of their tolls. The determination of the time of payment is not in truth committed to either party, but is left to events beyond the control of either.

I am of the opinion that the interpretation of this contract adopted by the court below in the last trial of this case, was correct and that this judgment should be affirmed with costs.

Affirmed.