[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 102 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 103 
The case was apparently heard at General Term, under the order of the judge made at circuit, without objection by either party; and although that order may not have been strictly regular, it appears to have been treated as made within the provisions of section 265 of the Code so far as it related to the exceptions taken on the trial; and any irregularity affecting it must be deemed as waived.
The order at General Term will, therefore, be assumed to have been made under that section of the Code, and is, consequently, reviewable by us on its merits. From such review the following conclusions have been reached by me:
1st. The ticket purchased by the plaintiff at Buffalo entitled him, at any time within twenty days from its issue, to a single passage from Buffalo to Albany over the road of the New York Central Railroad Company, and then to a single passage from Albany to New York over the road of the Hudson River Railroad Company. The passage was to be continuous after it was commenced on each of the roads, without the right of stopping at any intermediate station and renewing the journey on a different train at any subsequent time during the twenty days. The exercise of such a right would have given the plaintiff the benefit of a new and different passage. A party leaving a train at a particular place on a certain day could not, after stopping at several other places, and laying over a day or more at each of them, be considered, fifteen days thereafter, as still on one and the same passage. *Page 105 
Each departure from a different place would constitute a new passage. This construction of the ticket was insisted on by the counsel of the defendant as one of the grounds of his motion for a nonsuit, and was also asked to be given in the instruction of the court to the jury. The refusal to grant the nonsuit and to comply with such request was erroneous.
2d. Assuming, however, that the plaintiff had the right to avail himself of the ticket on different trains from time to time, then he lost that right if he left the Central coupon in the spring at the head of his berth when he went off at Utica. By the terms of the ticket it was good only upon its presentation, with the checks attached, to the conductor. If, therefore, the holder voluntarily or negligently deprived himself of that right, or became unable in consequence of his own act or omission of presenting the ticket in that form, he could not claim any privilege or right under it. There was a conflict in the evidence as to the circumstances under which the coupon in question was left in the sleeping car. The testimony of the plaintiff tended to show that it was given up by him on the demand of the conductor of the sleeping car on leaving the train at Utica; and he, on the other hand, swore that such was not the fact, but that he found it in the spring of the berth that had been occupied by the plaintiff.
Under this state of evidence the defendant's counsel asked the court to charge that if the jury believed that the plaintiff left his ticket in the sleeping car, the fact that he bought it in Buffalo, and there paid his fare to Albany, was no reason why he should not have been put off the second train when he would not produce his ticket or pay his fare. This was a proper request, and the refusal of the court so to charge was erroneous. The only evidence of such payment, which the conductor was authorized to receive, was the production of the ticket.
3d. It was proved that the fare paid by the plaintiff to the conductor of the Utica train (whose name was Morgan Gardner) was refunded by him at Albany; and the plaintiff testified that after he had received it he said to the conductor "this is *Page 106 
not the end of the matter," and made some other observations; and that the conductor, in replying thereto, called him a nigger and a thief, and also used these words: "I don't doubt but if your pockets were searched we should find them full of counterfeit money." In reference to which the counsel of the defendant requested the court to charge the jury "that the conduct of Gardner at Albany after he had paid back the fare, if the jury believe Hamilton's statement in regard to it, is not to be taken into consideration, as the company is not responsible for the acts of Gardner at that time and under the circumstances. If he did slander or abuse Hamilton then and there, the company is not liable." This, the case states. "the judge refused to charge, unless qualified;" and the defendant's counsel then and there excepted. It did not appear what qualification the judge deemed necessary, not has any been suggested in the prevailing opinion of the General Term, nor by the plaintiff's counsel. The request was proper as made. What was said and done by Gardner at that time was not in the discharge of his duties as conductor. The company could, with equal propriety, have been made responsible for an assault and battery committed after the money was so refunded.
The fact that the statement referred to in the request was made without objection by the defendant did not render the refusal proper. It is said with plausibility by MULLEN, J. (the judge who tried the cause and gave the prevailing opinion referred to), that the evidence "was conceded by both parties to be competent, as evidenced by the one by offering, by the other by not objecting to it. To instruct a jury that such evidence is not to be taken into consideration, is to exclude it from the case. This the court had no right to do." The remark is specious and unsound. It does not follow that the omission to object to testimony is a concession that it is competent. Counsel may deem certain evidence offered entirely irrelevant and immaterial, and, therefore, harmless, and, for that reason, raise no objection to its introduction, and thus avoid an exception, assuming, as the learned judge, *Page 107 
after making the remark above quoted, immediately added, that "being in, it was the duty of the court and jury to give it whatever effect it ought to have in the case."
On the application of that principle to the evidence referred to, the learned judge was asked to instruct the jury that it ought to have no effect whatever. This it was his duty to do if the testimony was irrelevant, and such as could legally have no influence whatever on their verdict.
It is claimed by the learned judge, however, that the evidence was competent, as a part of the res gesta, to show the quoanimo of the agent in the transaction, beginning at St. Johnsville and ending at Albany. The difficulty with that proposition is that the transaction which constituted the gravamen of the action was the ejection of the plaintiff from the car of the defendant; and that terminated at St. Johnsville, and not at Albany. The claim that what occurred at Albany several hours after such termination was, nevertheless, a part of the transaction, is refuted by the mere statement of the proposition. It might be added that the defendant was only liable for what was done by the conductor within the scope of the authority conferred on him in the discharge of his duty. It is conceded by the learned judge that it could not be charged with the agent's slanders; and he erred in holding that it could be held responsible for the quo animo of his action beyond the purpose of ejecting the plaintiff.
Assuming the views above presented to be correct, I deem it unnecessary to consider the other exceptions which were taken on the trial.
All of my brethren concur with me in what has been said on the third and last ground or question considered by me, but express no opinion on the other two questions. It follows that the order denying a new trial was, on that ground, erroneous; and the order must, therefore, be reversed, and a new trial must be ordered, costs to abide the event.
All concur in result.
Order accordingly. *Page 108