## DEAN v. ÆTNA LIFE INSURANCE COMPANY, appellant.

*Insurance — life policy — Agency — authority of general agent to bind insurance company. Waiver — of condition in policy — of proof of loss. Evidence — of declarations of agent — entries in books — memoranda — prior transactions between agent and third party. Trial — motion for nonsuit. Exception to incompetent evidence.*

A life insurance policy, issued by a Connecticut company, to a resident in New York, contained a condition requiring pre-payment of premiums. *Held*, that the general agent of the company, in New York, had before default authority to waive the condition and extend the time of payment of a premium so as to bind the company.

In an action upon a life insurance policy it was claimed on the part of the defendant, that proper proof, according to the condition of the policy, of the death of the insured person had not been made. It was shown that plaintiff applied to defendant's general agent for the necessary blanks for that purpose, and these were refused, upon the ground that the company did not recognize the claim. Plaintiff made up proofs, and by the direction of the agent sent the same by mail to the company. *Held*, that the agent was acting within the scope of his authority, his declaration was a waiver of proofs, and the proofs forwarded by mail were a sufficient compliance with the condition of the policy.

The premiums on the policy came due the 20th of September. Plaintiff's evidence showed that on that day, an agreement was made, by defendant's general agent, to extend the time of payment to November 5. This was denied by the agent. *Held*, that a memorandum by the agent, of the amount to be paid by the insured person, before the 5th of November, given, on the 1st of November, by the agent to one acting in behalf of the insured, was admissible to corroborate plaintiff's evidence.

Evidence on the part of the plaintiff in no way prejudicial to defendant, and in contradiction of plaintiff's version of a transaction, although incompetent, *held* not the ground for an exception by defendant. Entries in defendant's books, made by their agent, showing that the policy was canceled in October, it not being shown that plaintiff was a party, or consented thereto, *held*, inadmissible against plaintiff.

Upon his cross-examination, as a witness for the defendant, the agent's attention was called to a statement which he had made on the 12th of November, in relation to the agreement of extension. *Held*, that evidence of that statement was admissible to affect the credit of his testimony, as to the agreement.

Defendant moved for a nonsuit, upon the ground that it was not proved that the conditions of the policy were waived, and the time of payment extended by defendant, or any person having authority to do so, in its behalf. *Held*, not broad enough to present an objection to incompetent evidence received without objection at the time.

A note given during a former year to the agent, upon the extension by him of the time of payment of a premium, it appearing that the defendant acquiesced in the transaction, *held* admissible upon the question of the agent's authority to extend time of payment.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury and from an order denying a new trial. The action was. brought by Ruth E. Dean against the defendant, an insurance company located and doing business in Hartford, Conn., to recover the amount of two policies of insurance issued by the defendants upon the life of her husband, Henry Dean. The policies in question were issued through Lucius Morton, the general agent of defendant in New York, and each contained a provision that "in case the said assured shall not pay the said annual premiums on or before the several days hereinbefore mentioned for the payment thereof,. then, and in every such case, the said company shall not be liable to the payment of the sum insured or any part thereof, and this policy shall cease and determine."

The premiums were by the terms of the policies payable on or before the 20th of September in each year. On the 20th of September, 1869, the sums due as premiums were not paid and it was claimed on the part of the plaintiff that on that day the general agent of the company at New York city agreed with the insured that the. time for payment of the premiums might be deferred until the 5th of November following. This was denied by defendant. Evidence was given on behalf of plaintiff tending to establish the fact of such agreement, which was contradicted by the evidence on the part of the defendant. Such other facts as are material appear in the opinions.

*Theron G. Strong* and *John K. Porter,* for appellant. The admissions of the declarations of the agent made in November as to the arrangement of the 20th of September were erroneous. *Trustees of Baptist Church* v. *Brooklyn Fire Ins Co.,* 28 N. Y. 153; *Thallhimer* v. *Brinkerhoff,* 4 Wend. 394; *Fogg* v. *Child,* 13 Barb. 246; *Budlong* v. *Van Nostrand,* 24 id. 25; *Luby* v. *Hudson Riv. R. R. Co.,* 17 N. Y. 131; *Hubbard* v. *Elmer,* 7 Wend. 446; *Warner* v. *Warren,* 46 N. Y. 235. No authority was proved in the agent to waive the provisions of the policy as to time of payment. *Wall* v. *Home Ins. Co.,* 1 Trans. App. 324; *Hutchings* v. *Munger,* 41 N. Y. 158;. *Koelges* v. *Guard. Life Ins. Co.,* 2 Lans. 480; S. C., 58 Barb.

597; *Wood* v. *Poughkeepsie Ins. Co.*, 32 N. Y. 619; *Boehen* v. *Williamsburgh Ins. Co.*, 35 id. 131. It was error to charge that he had authority as matter of law. *Thurman* v. *Wells*, 18 Barb. 500; *McMorris* v. *Simpson*, 21 Wend. 610; *Jellinghaus* v. *New York Ins. Co.*, 8 Bosw. 281; *Lycoming Co. Mut. Ins. Co.* v. *Schollenberger*, 44 Penn. 259.

*Evarts, Southmayd & Choate,* for respondent.

DANIELS, J. By the express terms of both the policies in suit the premiums upon them were made payable on or before the 20th day of September in every year during their continuance. And each contained the statement that it was understood and agreed that in case the premiums should not be paid on or before the days mentioned for the payment thereof, the policy should cease and determine. The premiums which became due and payable on the 20th day of September, 1869, were not paid on or before that day, and the consequence resulting from that circumstance was that the policies ceased and determined unless the time for the payment was extended by some agreement or arrangement binding on the company. That such an agreement had been made was a fact to be satisfactorily established by the plaintiff before her right to recover upon the policies could be maintained, and that she endeavored to prove.

The evidence given in support of that fact consisted of the declarations and statements of the defendant's general agent in charge of its business at the city of New York. These statements were made on the 2d of November, 1869, and also a few days after the decease of the person whose life was insured by the policies, who died on the 19th of November of that year. They tended to show that an agreement was made between him and the defendant's general agent on the 20th of September preceding by which the payment of the premiums for that year was so far extended that no part of them became due until the 5th of November, 1869, and it was shown that payment of such part was tendered to the agent and refused by him after the statements were made and before that day. At the time when the statements were made by the agent admitting that he had made an agreement on the 20th of September, 1869, extending the time for the payment of the premiums for that year, he also delivered to the person he had the

interview with written memoranda indicating the amounts required to be paid according to the terms of that agreement. But they did not of themselves constitute such agreement, and were not delivered by the way of renewing or entering into it. The witness who received them stated that the agent gave him the memoranda " as indicating the arrangement which he had previously stated " to him, and as such they were no more than the oral declarations of the agent reduced to writing.

Two other memoranda, signed by the defendant's agent, were found among the papers of the person whose life was insured after his death, and were received in evidence on the trial. But they were evidently made before the 20th day of September, 1869, because they call attention to the fact that the premiums on the policies would become due on that day, and request payment of the amounts. That is succeeded by certain figures, unexplained upon the papers, which, with the explanation afforded by the agent's declarations, may possibly tend to indicate the existence of the agreement relied upon to sustain the recovery. But if they are capable of being used in that manner, it could not be done without the declarations themselves. So that if they were incompetent evidence for use in the case, nothing was proved from which an agreement for the extension of the time for the payment of the premiums could be inferred. Substantially that depended upon the declarations of the agent for proof of its existence. Without them there was nothing from which the extension of the time for the payment of the premiums could properly be found as a fact.

In this state of the proof, and after the evidence was all taken, the defendant moved for a nonsuit, specifying, among other reasons in support of its motion, that it was not proved that the conditions of the policies as to payment were waived, and the time of payment extended by the defendant or any person authorized to do so upon its behalf. The motion was denied, and the defendant excepted. If this objection had been broad enough to present the question whether the agent's declarations were competent evidence to show an extension of the time for the payment of the premiums against the defendant, it would have been in time, although the proof of them was received without objection. Those declarations were not competent evidence of the existence of an agreement made six weeks before the time when they were made against the defendant, the principal of the agent making them. *Anderson* v. *Rome, W. &*

*O. R. R. Co.,* 54 N. Y. 334. And the omission to object to them when they were offered did not deprive the defendant of the right to insist upon their incompetency at the close of the evidence, or any other time during the progress of the trial.

This was substantially held in the case of *Hamilton* v. *N. Y. Cent. R. R. Co.,* 51 N. Y. 100. But the objection actually taken did not present this point for the decision of the court. It simply presented the objection that the agent was not authorized to waive or extend the time of payment of the premiums. Whether the proof given to show that an agreement had been made for the extension was competent proof for that purpose was not mentioned or suggested. Neither this motion nor the grounds specified in its support, nor any other objection taken during the trial, presented that question. And as it was not raised at any time during the trial, it was necessarily waived when the case was submitted to the jury. The defendant had the right to have the case tried if it so elected on incompetent evidence; and the omission at any time to object is conclusive evidence of such waiver. By such conduct even the right to a trial by jury may be waived. *Greason* v. *Keteltas,* 17 N. Y. 491; *Penn. Coal Co.* v. *Del. & Hud. Canal Co.,* 1 Keyes, 72; *West Point Iron Co.* v. *Reymert,* 45 N. Y. 703; *Fisher* v. *Hepburn,* 48 id. 41; *Delaney* v. *Brett,* 51 id. 78.

The plaintiff offered in evidence a note made on the 20th day of September, 1868, given by the person whose life was insured by the policies for the payment of the premiums upon them in sixty days after its date, containing the agreement that the policies should be null and void if the note should not be paid when it was due. This was objected to by the defendant on the ground that it was immaterial. The objection was overruled and the defendant excepted. In one respect this was material evidence. For the authority of the agent to extend the time for payment of the premiums was controverted by the defendant, and if that had previously been done by him with the approval of the defendant it was a fact tending to show the existence of the authority. When the agent himself was examined as a witness the defendant showed the transaction of 1868 fully by him. And it appeared from his evidence that the papers were sent to the defendant, which made no objection, but approved of the arrangement. This was all competent for the purpose of showing the agent's authority to change or extend the time fixed for the payment of the premiums.

The agent, on the defendant's examination of him, showed that a receipt had been given when the note was taken, and there could be no well-founded objection against afterward receiving the receipt itself for the purpose of having its precise terms in evidence. It was a material part of the transaction, which the defendant had taken pains to prove, and there could be no impropriety in reading it to show exactly what had been done so far as that appeared by the receipt.

The declarations proved to have been made in one of the interviews after Mr. Dean's death, and which was objected to as incompetent by an objection expressly confined to the particular occasion inquired for at that time, did not tend to prove the existence of any valid agreement for the extension of the time fixed by the policies for the payment of the premiums, and for that reason the exception taken to the decision, allowing them to be proved, can be of no service to the defendant.

The admission of the agent shown under it tended to prove that the terms proposed had not been complied with by Mr. Dean, and for that reason it was entirely ineffectual as evidence against the defendant. It maintained the position of the defendant, and tended to subvert the plaintiff's claim. , *Vandevoort* v. *Gould*, 36 N. Y. 639, 644.

The conversation which was stated by the witness, Keese, was of the same general nature. He said that Morton told him substantially what he had said during the trial as a witness. So that it could not possibly have done the defendant any harm, and while it was objected to it was not because it was incompetent, but simply because it ought to have been called out on the direct examination.

The remark made by the witness concerning this conversation is equally as applicable to the one just before considered, for that was no more than a repetition of what Morton, the agent, swore to himself.

The evidence sufficiently showed the service of the notice and proof of the death of the person whose life was insured, without the declaration of the agent that they had been received by the company. They were tendered to the general agent, and after being refused by him were mailed under his direction to the president of the company, at its place of business in Connecticut, and that certainly should be sufficient to prove a compliance with the terms of the policy on this subject. Besides that, it appeared that

the refusal to pay was placed by the company on the omission to pay the premiums, and that would be sufficient to constitute a waiver of all proof of death. *Post* v. *Ætna Insurance Co.*, 43 Barb. 353; *Cornwell* v. *Haight*, 21 N. Y. 462.

An objection was taken to the copy of the notice and proof of death offered in evidence, but it was not objected to because it was a copy. The objection was expressly placed on the reasons that it did not appear that the original came to the possession of the company; that the fact of mailing was not such evidence of its receipt as to justify the admission of a copy in evidence. These reasons were not good because the proof did show a proper service of the original.

The tender to the agent and mailing to the president, as he directed, sufficiently showed the service of the notice and proof of death to comply with the terms of the policy. The only authority opposed to the validity of such a service is that of *Hodgkins* v. *Montgomery Co. Mut. Ins. Co.*, 34 Barb. 213; and that was afterward reversed by the court of appeals. See 41 N. Y. 620.

The agent appears to have been the general agent of the company at the city of New York, and he was authorized as such to transact all the company's business at that place, which included all that he did concerning this insurance, and for reasons already given as well as those mentioned by Mr. Justice BRADY, the judgment, after being modified as directed by him, should, with the order denying a new trial, be affirmed.

BRADY, J. The plaintiff claimed, as the widow of Henry Dean, the sums secured by two policies delivered to her, dependent upon the life of her husband, Henry Dean. The premiums payable for the year during which he died were payable on the 20th of September, 1869, and on or before that day Morton, who was the defendant's general managing agent in this State, agreed with Henry Dean to extend the time of payment until the 5th of November, 1869, or in other words, he gave Mr. Dean until the fifth to pay his premiums. On the 2d of November a tender was duly made of the money payable, and Morton refused to receive it, having, it would seem, in an interview between Mr. Dean's representative and himself, discovered that Mr. Dean was then ill. The evidence on the subject of the agreement to waive the payment of the premiums, in exact conformity to the terms of the policy, was in con-

flict, the defendant's agent, Morton, denying that it was made as asserted on behalf of the plaintiff. The question was submitted to the jury on this conflict, and decided by them in favor of plaintiff. It is not deemed necessary to consider the evidence in detail. It is sufficient to say that it abundantly sustains the conclusion at which the jury arrived. The further question was also submitted to the jury and found also in favor of the plaintiff, whether the defendants received the proofs of death contemplated by the policy. Several exceptions were taken during the trial, and to the charge of the justice presiding and to his refusals to grant requests made, which it will be necessary to consider. It may be here remarked, however, that the authority of the general agent as such to waive the condition of the policy requiring prepayment of the premiums cannot be doubted, and that his acts thereto are binding on the company. Whatever his secret instructions may be such is the established rule of law in this State. *Sheldon* v. *Atlantic F. & M. Ins. Co.*, 26 N. Y. 460; *Wood* v. *Poughkeepsie Ins. Co.*, 32 id. 624; *Bodine* v. *Exchange Fire Ins. Co.*, 51 id. 122; *Boehen* v. *Williamsburgh City Ins. Co.*, 35 id. 532.

In this case assuming the agreement to waive the prepayment and to wait for it until the 5th of November, 1869, to have been made as alleged on behalf of the plaintiff, there can be no doubt, indeed it is not denied, that it was in terms sufficient to accomplish the object for which it was made. The jury having declared that it was made as averred, and that the requisite proofs were furnished, it follows that unless some error of law was committed requiring a reversal the judgment must stand.

The answer of the defendants set up two grounds of defense, namely, the forfeiture of the policies by the failure of the plaintiff and her husband to fulfill their conditions, and the failure of plaintiff to give due notice and proof of the death of the insured in accordance with the rules, by-laws and practice of the defendants. The defenses were not established, nor was either of them. It will be perceived that the averment as to notice is of the want of *due* notice or notice or proof in accordance with the rules referred to. The proof furnished on that subject by the plaintiff was:

1. That Morton refused to give to the plaintiff's attorney the blanks used in making up the proofs on the ground that the defendants did not recognize the claim.

2. That the proofs subsequently made up were presented to Morton who declined to receive them, telling the person who presented them that they should be sent to the president of the company, which was done by mail; and lastly, Morton's admission that they had been received by the defendants. Morton said on his examination that the proofs were sometimes left in his hands to send forward; that he often directed persons to send proofs of loss to the president; that there was no regular rule about it and that they were often sent by mail by the parties. These facts were quite sufficient to show the performance of the condition of the policy as to proofs, and to justify the result on that subject at which the jury arrived. The defendants' managing agent, when acting with reference to the proofs of loss, was acting within the scope of his agency. He sometimes took them to send forward and sometimes directed them to be sent by mail. This practice was acquiesced in on his own statement. If it were not so however, the defendants, through him, having refused to give the blanks because the claim was not recognized, rendered it unnecessary to send the proofs. They placed their declination, not upon the ground that they were under no obligation to furnish them or that they did not believe in the death of Mr. Dean, but upon the ground assuming the death to have occurred that they would not recognize the claim and therefore would not pay it. This was a waiver of proofs. Phillips on Ins., § 1803; *Francis* v. *Ocean Ins. Co.*, 6 Cow. 404; *O'Neil* v. *Buffalo Fire Ins. Co.*, 3 N. Y. 122; *Post* v. *Ætna Ins. Co.*, 43 Barb. 351.

In addition to the exception just considered, the defendants took others prior to the motion to dismiss the complaint which must be briefly noticed. It appeared on the trial that on the 1st of November, 1869, when the representative of Mr. Dean went to the office of the defendants, a memorandum was given him showing the amount to be paid by Mr. Dean before the fifth of that month, and that after the death of the latter, two memorandums were found among his papers to the same purport, which were introduced in evidence under the defendants' exception. They were subsequently shown to have been sent by the defendants to Mr. Dean, and as they bore upon the arrangement of September in reference to the alleged division of the premiums were clearly competent. They were admissions that such a division had been agreed upon on their part and were so far corroborative of the plaintiff's version of the

controversy. The ground of the objection to them was that they were immaterial, but it is very clear for the reason stated that they were pertinent to the real issue in the case.

The defendants also excepted to proof of an interview with their agent, Mr. Morton, after the death of Mr. Dean, in reference to the arrangement made with the latter, prior to his death, on the ground, "that declarations and statements of Mr. Morton, on that occasion, in reference to past transactions, could not affect the defendants, and as immaterial."

In answer to question, the witness said: A. "Mr. Morton said that Mr. Dean had come to his office and said 'he was afraid he would have to give up his policies, for he had not got the money to meet the premiums, and I urged him not to give them up; and to make it easier for the old gentleman (he used those words), I divided it up into four quarterly payments, and I prepared the notes for him to sign; he finally came in and sat down at the desk, took up a pen and signed some of the notes; and then, without saying a word, put down his pen and went out, and that was the last I saw of him.' I asked him what he did with those notes: 'Well,' said he, 'I looked upon them as amounting to nothing; the business was not finished, and, after a while, I tore them up and threw them into the waste basket.' He said Mr. Dean had come to him, and that arrangement or talk was had at the time the premium was due."

Assuming that this evidence was prohibited within the rule that the declarations of an agent not engaged in the performance of any act relating to his agency are incompetent, it is, nevertheless, very clear that it was not in any way injurious or prejudicial to the defendants. It was in contradiction of what the plaintiff claimed to have occurred on the occasion to which it related, namely, the signing of all the notes necessary to consummate the policies and the agreement, to extend the time of payment of the premiums to the 5th of November, which was the only remaining ceremony necessary to complete the transaction. It was a statement, which, if true, showed conclusively, that the preliminaries indispensable to the completion of the contract, had not been performed; that all the notes had not been signed; that the matter was left unfinished by the deceased; that the business was not perfected; that Morton looked upon the two notes signed as amounting to nothing, and that he tore them up and threw them into the waste basket. This was

substantially the statement made by Morton himself, as appears by the extract from his evidence, as follows:

" On the 20th of September, 1869, he came in again, that was the day upon which his premiums were due, and after a good deal of conversation, I pressed upon him to keep up the $5,000 policy by quarterly payments, showing, that he would not have a great deal of money to pay, and he rather, after a time, assented to it, so much so, that I thought he would do it. I told him he could get the money from his friends; that anybody would lend him that amount to keep his policy up, at his time of life. The premium was $202, about $60 with interest added; some thing over $60 the first payment, and about $50 on the three subsequent payments. He had notes prepared. My young man, in preparing the notes for the quarterly payments on the $5,000, filled up the blanks for the other; he did not comprehend what was to be done — the book-keeper I had in my office. They were all laid down on the desk, and Mr. Dean signed two. I suppose I can tell what was done with these notes. There were two others which he should have signed, toward the payment of that policy. He hesitated a long time, between the two signatures, for the two notes. There were four of them to be signed, and he signed two, to pay the $5,000 policy, and there was about $60 in money to pay. He sat fifteen minutes between the signing of the two; pushed them back from the desk; the others were lying loose there; they had not been signed at all; he pushed them back and moved away from the desk, and went out of the office. I supposed he was going to return; he said he would see what he could do, and seemed embarrassed in his mind about not being able to get the money; seemed not to know where to look for the money. It occurred to me he had gone out for the money to settle for the one policy, but he did not come back again, and I never saw him after that day.".

The only difference which is of any moment is, that Morton makes the signing of the notes apparently relate to the policy of $5,000 only, but it will be perceived, on examination of his testimony, that the transaction was not thus confined. Morton, notwithstanding this attempt, says that "his young man, in preparing the notes for the quarterly payments on the $5,000 policy, *filled up the blanks for the other*. They *were all laid down on the desk*, and Mr. Dean signed two." If the $10,000 policy was not to be included in the agreement, why were they not taken away when discovered? Why was

Mr. Dean permitted to begin the signing of all the notes? They were all laid down before him, and for no other purpose than that they should be signed in accordance with the conclusion at which they, Dean and Morton, had arrived from the interview which was about to close. This narrative of Morton, even in the respect named, does not therefore substantially differ from that given by the witness; but the difference, if any there be, is wholly immaterial, because the result of the meeting between Dean and Morton was the same as stated by both Morton and this, the plaintiff's witness, and it was that the agreement was not completed. The deceased signed only two of the notes, sat fifteen minutes between the signing of the two, pushed the notes back, and left the office not to return. Morton never saw him afterward. This is Morton's account. The effect of both pieces of evidence is that nothing was finished, either in regard to one or other of the policies, and it is clear, therefore, that the evidence could do the defendants no injury. It was not in support of the plaintiff's case. It was in harmony with and in aid of the defendants' case. If the plaintiff did not show an entirely different state of facts, the defendants must have succeeded. She recovered on an agreement completed, and this testimony did not in any way tend to show the contract she set up in any respect in which it was denied. It was, indeed, in decided hostility to the proposition that such an agreement as she averred to have been made had *in fact been completed*. The exception should fail for these reasons.

These are all the exceptions taken prior to the motion to dismiss the complaint, which was made chiefly upon the assumption that the evidence established or failed to show facts which either operated to the defendants' benefit, or against the plaintiff's right to recover. It is not necessary to consider them in detail. It is enough to say that the defendants' counsel was mistaken in his estimate of the effect of the evidence given, and in his view of the failure of proof which he asserted.

The evidence had established a *prima facie* case, and one which it became the imperative duty of the court to entertain, and therefore to submit to the jury. The motion was, therefore, properly denied.

The defendants' counsel also offered to show that the policies were canceled in October, 1869, before Mr. Dean died, by entries made by the defendants, but this offer was made after Morton had

stated as follows: "In October, 1869, premium canceled; that is, both policies were canceled and returned to the company for non-payment of the premium." The value of the entry after this evidence is apparent. The policies had been returned by the agent, here if at all, and the entry must necessarily have been predicated of such return. The evidence, however, was inadmissible. It was substantially a declaration of the defendants that they regarded their liability as having ceased. They could not deprive the plaintiff of any right, or affect her rights by any entry in their books to which she did not assent, and to which she was not a party. This testimony, and the attempt to show whether in the statement of the defendants' affairs the policy was returned as one of its assets or a lapsed policy were properly excluded.

The defendants also excepted to the exclusion of a question asked of Morton: "Had you any more authority to extend the time of payment than to waive the forfeiture of a policy after it had lapsed?" The exception was not well taken, for several reasons, one of which alone is sufficient, and that is, that notwithstanding the exclusion of the question it was immediately answered by the witness, who said he had no right to extend the time or waive the forfeiture.

The defendant also excepted to the proof of an interview on the 12th of November, 1869, between Mr. Keese and Morton, the object of which was to contradict him and in that way to assail his credibility. The attention of Morton had been called to the conversation on cross-examination and the foundation laid for the procedure. It related to a material fact, which was indeed the gist of the plaintiff's action, namely, whether the time for the payment of the premiums had been extended, without proof of which the plaintiff could not recover. Morton denied that he had said to the witness on the 12th of November several things on the subject, the leading and important feature of which was the waiver of the prepayment at the time designated by the policy. The defendants' agent having, as alleged, made the agreement thereto, and having denied that he did so, it became important to show his conflicting statements on the subject. He had testified to the existence of a material fact within the issue, and such statements were clearly admissible with a view to affect his credit. *Patchin* v. *Astor Mut. Ins. Co.*, 13 N. Y. 268. The exception cannot be sustained.

The defendants also excepted to the admission of the receipt

signed by Morton of Mr. Dean's note, payable sixty days after date, for the premium on his policies in 1868, but the exception has no merit. It was admitted by Morton, on cross-examination, that sixty days had been given Mr. Dean to pay his premiums and the receipt showed the manner in which it was done. If the evidence were inadmissible it related to a conceded fact and could not therefore possibly prejudice the defendants.

The exception taken to the denial of the defendants' second motion to dismiss the complaint was not well taken. The grounds assigned did not warrant any other disposition of that motion. It was substantially a reiteration of the former motion and was doomed to the same fate.

A careful examination of the exceptions to the charge and the refusals to charge as requested discloses no error in law. The defendants' case was tried upon theories which were never abandoned and which their counsel tried to make dominant, but without success, the most prominent of which was that the defendants' agent, Morton, had no authority to extend the times of payment derived from the defendants, but he encountered the legal difficulty constantly that in law he had such authority according to adjudged cases. It appears also that the plaintiff's right to recover depended upon questions of fact, about two of which at least there was conflicting evidence and upon which the jury were to determine them. The judge presiding pointed them out and called the attention of the jury to the conflict so that they fully understood the responsibility cast upon them. These questions were : 1. Whether or not the defendants through their agent, Morton, extended the time for the payment of the premiums, the other preliminaries, such as the signing of the necessary notes, having been complied with ; 2. Whether, if it was extended, the tender of the money to be paid was made in time ; and 3. Whether the plaintiffs gave such proofs of loss as were sufficient under the policy and the laws governing such contracts. All these questions were fairly disposed of by the jury on the whole evidence. The defendants were fully and ably defended. The vigilance of their counsel let no chance pass by which would avail them, and hence a multitude of exceptions in the case. The struggle seems to have been a hard one on the part of the defendants to relieve themselves of a liability duly incurred, but the facts and circumstances were too strong to be overcome and they failed. An impartial investigation

of the evidence given on the trial shows, as already suggested, the complete justification of the jury in rendering their verdict on the main issues in favor of the plaintiff.

In one respect, however, we think there was an error committed. The policy provides that in case the sum secured shall become payable, all indebtedness of the party to the company shall be deducted. The premiums for the year 1869 and payable on the 20th September of that year, were not paid and should have been deducted. They were payable before the death occurred. They amount to $2.997.60, and this sum should be deducted from the amount of the judgment.

DAVIS, P. J., dissented on the following grounds : First. Incompetent declarations of the agent were admitted against the defendant's objection. They were not harmless, because they were regarded by the court and jury as material and important, as appears by the charge, and because the ruling upon them established a rule of evidence for the case, and subsequent evidence of such declarations was given, to which it must be assumed the defendant omitted to object on that ground in deference to the ruling that such declarations were competent.

2d. The *fact* that the policies were canceled in October was competent as tending to corroborate the testimony of the agent that no extension was made. It was an act in the due course of business.

3d. There was no evidence in the case to establish the alleged waiver except incompetent proof of Morton's declarations. The motion for nonsuit raised the question of absence of lawful proof of waiver. The overruling of the motion was error.

4th. The verdict was against evidence and a new trial should have been granted on that ground. The claim is of the most suspicious character and the evidence to uphold it I think was illegal and insufficient. I think a new trial should be granted.

The judgment of the court, in accordance with the opinion of BRADY and DANIELS, J J., was as follows : Judgment and order reversed and new trial granted, with costs to abide the event, unless plaintiff, within twenty days after entry of the order herein, stipulates to deduct $2,997.60 as of the date of the verdict, in which case judgment and order affirmed, without costs to either party.

*Ordered accordingly.*